THOMAS J. MCCARTHY *vs*. CIVIL SERVICE COMMISSION & others.[1]

No. 90-P-633.

Suffolk. October 15, 1991. - February 26, 1992.

Present: KASS, JACOBS, & LAURENCE, JJ.

*Civil Service*, Reassignment of personnel, Termination of employment. *Public Employment*, Termination. *Boston Water and Sewer Commission.*

Where an employee had occupied a civil service position as laborer with the water division of the Boston department of public utilities and was transferred by virtue of St. 1977, c. 436, § 5, fifth par., to a position with the Boston Water and Sewer Commission, an agency exempt from the civil service laws, the employee retained his civil service protection pursuant to that statute's "grandfather" provision only so long as he continued to occupy a position similar to that of laborer; he lost such protection by accepting promotion to a different and concededly unprotected job. [169-172]

CIVIL ACTION commenced in the Superior Court Department on March 16, 1989.

The case was heard by *Richard S. Kelley*, J.

*Peter Sacks*, Assistant Attorney General, for the defendants.

*Peter T. Lyons* for the plaintiff.

LAURENCE, J. To facilitate more efficient upkeep and operation of the city of Boston's deteriorating water and sewer systems, the Legislature, by the Boston Water and Sewer Reorganization Act of 1977, St. 1977, c. 436, abolished the water and sewer divisions in the city's department of public works (DPW), which had previously performed such func-

---

[1]The Executive Director of the Boston Water and Sewer Commission (hereinafter the Water and Sewer Commission), and the Boston Municipal Court.

tions. The Boston Water and Sewer Commission (Water and Sewer Commission) simultaneously came into being to take their place, effective January 1, 1978. St. 1977, c. 436, § 5, fifth par. The statute declared all officers, employees, and other personnel of the new Water and Sewer Commission exempt from the civil service laws, *id.*, § 4, except for employees at the old water and sewer divisions who held positions enjoying civil service protection as of January 1, 1978. Section 5 of c. 436 automatically transferred such employees "to a similar . . . position under the commission . . ." and contained a grandfather clause which provided, in pertinent part, that "by such transfer, their rights under [the civil service law, G. L. c. 31] . . . shall not be impaired . . . notwithstanding any change in title or duties . . . ." St. 1977, c. 436, § 5, fifth par.[2] At the time of the automatic transfer, the appellee, Thomas J. McCarthy, had occupied the civil service position of "Laborer" in the water division of the DPW since 1971. Upon his automatic transfer on January 1, 1978, he became an employee of the new Water and Sewer Commis-

---

[2]Section 5, fifth par., reads in full as follows:

"Effective January first, nineteen hundred and seventy-eight, the water and sewer divisions in the department of public works of the city are hereby abolished. Upon such date, the employees of said divisions whose work is primarily related to the water works system or the sewerage works system shall be transferred to the [water and sewer] commission. All such employees who immediately prior to such date hold positions classified under chapter thirty-one of the General Laws or have tenure in their positions by reason of the provisions of any general or special law, shall be transferred to a similar office or position under the commission; and by such transfer, their rights under the provisions of chapter thirty-one of the General Laws and their rights, seniority, wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances shall not be impaired and their term of office shall not be deemed to be interrupted within the meaning of said chapter thirty-one, notwithstanding any change in title or duties; provided that no permanent employee shall be involuntarily separated from his office or position except subject to and in accordance with sections forty-three and forty-five of said chapter thirty-one and provided, further, that such employees shall exercise all powers and perform all duties so transferred subject to the direction, control and supervision of the commission."

sion in a position entitled "Laborer/Temporary Motor Equipment Operator."

The issue on this appeal by the Water and Sewer Commission and the Civil Service Commission is the proper meaning and scope of that grandfather clause. They contest a ruling of a Superior Court judge, who held that it afforded McCarthy "total" and "permanent" civil service protection for as long as he was employed by the Water and Sewer Commission.

In August, 1978, McCarthy had received a promotion from "Laborer" to "Meter Reader." He was further promoted to "Special Meter Reader" in November, 1980, but demoted back to Meter Reader in February, 1982. Finally, in April, 1985, the Executive Director of the Water and Sewer Commission, after holding an evidentiary hearing, discharged McCarthy for alleged wrongdoing.[3] It is undisputed that neither the Water and Sewer Commission nor McCarthy complied with civil service procedures with respect to any of his promotions or demotions.

McCarthy demanded a just-cause hearing before the Civil Service Commission to challenge his discharge, pursuant to G. L. c. 31, § 41. In May, 1986, the Civil Service Commission concluded that it had no jurisdiction over the matter. It dismissed McCarthy's case on the basis of the Water and Sewer Commission's argument that the Meter Reader position from which McCarthy had been discharged was not a civil service position. McCarthy then appealed to the Boston Municipal Court, pursuant to G. L. c. 31, § 44. In January, 1989, that court upheld the Civil Service Commission's determination that it lacked jurisdiction.

McCarthy next filed a complaint in the nature of certiorari in the Superior Court, pursuant to G. L. c. 249, § 4, seeking review of the Municipal Court's decision as legally errone-

---

[3]The stated reason for McCarthy's discharge was falsification of meter readings, aggravated by fighting with fellow employees, insubordination, and selling lien certificates. McCarthy has contended that his discharge was unjustified, without specifying in what respect it was wrongful or without just cause.

ous.[4] As noted above, the Superior Court judge, relying on the "notwithstanding any change in title or duties" language in St. 1977, c. 436, § 5 (note 2, *supra*), set aside the decisions of the Municipal Court and the Civil Service Commission. The judge accepted McCarthy's argument that he retained civil service protection for the duration of his employment with the Water and Sewer Commission, because the grandfather provision of § 5 "ran to [McCarthy] personally" and not just to the position he occupied at the time of his transfer by operation of law. The judge remanded the matter to the Civil Service Commission for a full hearing on the merits of McCarthy's April, 1985, discharge. This appeal followed.[5] We reverse the judgment because it is founded on an erroneous interpretation of St. 1977, c. 436, § 5, fifth par.

The plain language of that statutory provision undercuts McCarthy's contention that it conferred perpetual civil service status upon him. The third sentence of the fifth paragraph effected only a limited grandfathering. It spoke to the moment in time, January 1, 1978, when the employees of the old DPW water and sewer divisions were transferred by operation of law. It protected the transferred employees' civil service rights in only one respect, by prohibiting the impairment of those rights in or by the process of being transferred into a "similar position" in the otherwise non-civil service environment of the new Water and Sewer Commission.

---

[4]Despite the language of G. L. c. 31, § 44 (1988 ed.), that the Municipal Court's decision "shall be final and conclusive upon the parties," the Supreme Judicial Court has made clear that such finality and conclusiveness inheres only in the Municipal Court's findings of fact. Substantial errors of law apparent on the record are appropriately reviewable by an action in the nature of certiorari. *Whitney* v. *Judge of the Dist. Court*, 271 Mass. 448, 458 (1930).

[5]It is doubtful that the judge's remand order is an appealable final judgment. See *Roberts-Haverhill Assocs.* v. *Haverhill*, 2 Mass. App. Ct. 715, 719-720 (1974). This court has discretion, however, to entertain an appeal even if it is not one that is here of right. Compare *Cabral's Case*, 18 Mass. App. Ct. 141, 143-144 (1984). We elect to entertain the appeal in this case because our disposition will resolve the controversy. Dismissal would serve no purpose other than to make it necessary for the parties to return to reargue issues already fully briefed and argued.

Nothing in the third sentence of the fifth paragraph protected the civil service rights of transferred employees who subsequently might, like McCarthy, willingly accept promotion,[6] out of the "similar position" they had held at the time of the automatic transfer, into a new position which was exempt from civil service.[7] The provision preserved McCarthy's status as an employee entitled to civil service protection so long as he remained in the position he held as of the date of his automatic transfer, or in a "similar" position. He lost such protection when he voluntarily accepted promotion seven months thereafter to a different and concededly unprotected job. Discharge from that non-civil service position did not entitle him to invoke civil service rights.

The statutory language on which the Superior Court judge relied does not compel a different result. The words "notwithstanding any change in title or duties" recognized that the "similar" positions to which McCarthy and other DPW employees were automatically transferred might not be strictly identical in title or duties[8] but that such insubstantial changes would not affect the transferees' civil service rights.[9] The structure of the grandfather provision and the contextual placement of the "notwithstanding" language confirm this

---

[6]A civil service employee may not be promoted unless the employee is willing to accept the promotion. G. L. c. 31, § 25.

[7]The record does not indicate whether the Meter Reader position McCarthy was promoted to and ultimately discharged from existed in the abolished divisions of the DPW; or, if it did, whether it enjoyed civil service protection there. If it did not, we would hesitate to read the grandfather clause of § 5 to confer upon McCarthy greater rights than those to which he would have been entitled had c. 436 never been enacted. Even if it did, however, it is clear from the record that it was a position different from, not "similar" to, that of Laborer and that it was not a position with civil service status at the new commission.

[8]McCarthy, for example, was transferred from a Laborer position at the DPW to a "Laborer/Temporary Motor Equipment Operator" position at the Water and Sewer Commission.

[9]Such language would also prevent any wholesale elimination of transferees' civil service protection through the device of making insubstantial changes in the titles or duties of positions as a part of or immediately after the transfers, although there is no evidence or allegation here that the Water and Sewer Commission engaged in any such a pretext with respect to either transferees generally or McCarthy individually.

reading. The words "notwithstanding any change in title or duties" appear at the end of the clause beginning with the words "by such transfer." Their manifest meaning is that any superficial change in title or duties caused by or incident to the transfer should not result in loss of civil service rights. There is no suggestion in this language, however, that a transferee's civil service protection was intended to survive bona fide changes in position subsequent to the transfer, such as McCarthy's promotion to the quite different job of Meter Reader.[10]

Our construction of the grandfather provision of § 5 is consistent with the general principle that civil service rights are not personal but inhere in the position, see *Bessette* v. *Commissioner of Pub. Works*, 348 Mass. 605, 610 (1965).[11] It is also in harmony with the intent of the Legislature in enacting St. 1977, c. 436, to free the new Water and Sewer Commission from civil service constraints in order to streamline and modernize Boston's decrepit water and sewer services, *id.* § 1, by, inter alia, enhancing its control over personnel matters. McCarthy presented no public policy support for his strained interpretation of the statute, which would provide him with the unique and dubious privilege of enjoying civil service protection in a non-civil service position that he did not have to satisfy civil service requirements to obtain. We know of no policy rationale that would be vindi-

---

[10]McCarthy's other arguments for recognizing his right to civil service protection are unsupported by any authority and do not have sufficient merit to warrant discussion, if for no other reason than that they were not raised before the Civil Service Commission or the Municipal Court and are therefore not properly before us. See *Vaspourakan, Ltd.* v. *Alcoholic Beverages Control Commn.*, 401 Mass. 347, 354-355 (1987).

[11]This principle is reflected in Department of Personnel Administration Rule PAR 15(a), 1 Mass. Civil Service Rep. 2033 (1988), which states that "All civil service rights of an employee rest in the position in which he holds tenure." Such rules regulate the civil service system, G. L. c. 31, § 3, and have the force of law, *Kenney* v. *McDonough*, 315 Mass. 689, 693 (1944). McCarthy is presumed to know them, both as a citizen, *Bray* v. *Bray*, 359 Mass. 439, 442 (1971), and as a public employee, *Ransom* v. *Boston*, 192 Mass. 299, 307 (1906). Indeed, the rules of the civil service system are deemed to "constitute[ ] a part of the terms of [every public employee's] employment," including a laborer such as McCarthy. *Ibid.*

cated by upholding his desire to obtain the benefits of the civil service system without shouldering any of its burdens, but even were he to articulate one, it could not prevail against the provisions of the controlling statue.[12]

In conclusion, at the time he was discharged from his Meter Reader position, McCarthy had no civil service rights requiring a just-cause hearing. The Civil Service Commission therefore correctly declined jurisdiction over his unjust-discharge appeal. We reverse the judgment of the Superior Court. A new judgment is to be entered affirming the decision of the Boston Municipal Court.

*So ordered.*

---

[12]When the Legislature wants to preserve transferees' civil service rights notwithstanding their future promotions in the new agency, or wants to guarantee safe return to civil service statue by employees promoted to non-civil service positions, it knows how to do so and does so explicitly. See, e.g., St. 1956, c. 465, § 22; St. 1978, c. 552, § 44; G. L. c. 18, § 8.