888 P.2d 475 (1994)
119 N.M. 29
HIGH RIDGE HINKLE JOINT VENTURE and Gene Hinkle, Petitioners-Appellees/Cross-Appellants,
v.
The CITY OF ALBUQUERQUE, Pauline Gubbels, Deborah Lattimore, Michael Brasher, Herb Hughes, Ruth Adams, Steve Gallegos, Tim Kline, Vince Griego, and Alan Armijo, Respondents-Appellees/Cross-Appellees,
Embudo Canyon Neighborhood Association, Intervenor-Appellant/Cross-Appellee.
Nos. 14606, 14665.
Court of Appeals of New Mexico.
October 26, 1994.
Certiorari Denied December 7, 1994.
*477 George R. "Pat" Bryan, III, Timothy V. Flynn-O'Brien, Bryan & Flynn-O'Brien, Albuquerque, for petitioners-appellees/cross-appellants.
David S. Campbell, City Atty., Katherine C. Pearson, Acting City Atty., Carolyn S. Fudge, Asst. City Atty., Albuquerque, for respondents-appellees/cross-appellees.
Ethelinda Dietz, Albuquerque, for intervenor-appellant/cross-appellee.

OPINION[1]
HARTZ, Judge.
The parties' briefs on appeal present several challenging issues regarding the City of Albuquerque zoning code. Matters of procedure, however, determine the outcome of this appeal. Therefore, we present in some detail the procedural posture of this case.

I. PROCEDURAL HISTORY
For approximately eleven years Gene Hinkle and High Ridge Hinkle Joint Venture (collectively referred to as Hinkle) have owned a twenty-acre site at the northwest corner of Tramway and Indian School in Albuquerque. The site has been zoned C-2 for twenty-six years. Hinkle has developed 15.6 acres with an apartment complex, an office building, and a theater. In 1991 Hinkle planned to develop most of the remainder of the site with three acres for a miniature golf course and arcade and 3/4 acre for bumper boats and go-carts. On August 23, 1991, Hinkle obtained a declaratory ruling from the City of Albuquerque Zoning Enforcement Officer that miniature golf courses and arcades are permissive uses and go-carts and bumper boats are conditional uses in the C-2 zone. A permissive use ordinarily is allowed in the zone as a matter of right. A conditional use is permitted if it will not injure adjacent property, the neighborhood, or the community and will not be significantly damaged by surrounding structures or activities. Albuquerque, N.M., Comprehensive City Zoning Code § 7-14-42.C.1.
*478 The City instructed Hinkle to obtain two separate approvals for the developmentone for the permissive uses (miniature golf and arcade) and one for the conditional uses (bumper boats and go-carts). The Environmental Planning Commission (EPC) approved the site plan for the permissive uses. The Zoning Hearing Examiner granted a permit for the conditional uses. In November 1991 the Embudo Canyon Neighborhood Association appealed the declaratory ruling, the EPC's approval of the site plan for the permissive uses, and the hearing examiner's approval of the conditional uses. Each appeal took a different course through City government.
The Board of Appeals heard the appeal from the grant of the conditional use. On December 12, 1991, by a three-to-one vote, the Board reversed the hearing examiner's decision on the ground that Hinkle did not "conclusively" prove that the proposed conditional uses would not be injurious to the adjacent property, neighborhood, or community. Hinkle appealed that decision to the City Council, which on March 2, 1992, ruled that the Board had utilized an incorrect standard and remanded to the Board for determination of whether Hinkle produced "convincing proof" that it was entitled to the conditional use. Further action by the Board was mooted, however, by developments in the appeal of the declaratory ruling.
The appeal of the declaratory ruling had proceeded as follows: The EPC held a hearing on January 9, 1992, at which the Zoning Enforcement Officer testified concerning the City's prior practice in approving go-carts as conditional uses. The EPC upheld the declaratory ruling. The Neighborhood Association then appealed to the City Council. At its meetingof February 3, 1992, the Council remanded the matter to the Land Use Planning and Zoning Committee. After a hearing the committee voted three-to-two to recommend to the Council that it uphold the declaratory ruling without a further hearing and by a four-to-one vote found that go-carts and bumper boats are conditional uses in a C-2 zone. On March 2, 1992, the City Council deadlocked four-to-four on a motion to accept the committee report; therefore the matter was scheduled for a full Council hearing. At its meeting of March 16, 1992, the Council unanimously ruled that an arcade and miniature golf are permissive uses but go-carts and bumper boats are not conditional uses in a C-2 area.
As a result of the Council decision, on March 18 the Board of Appeals issued a letter indicating that it would take no further action on the appeal of the grant of a conditional use. The Council decision made it unnecessary to evaluate the effects that the use of go-carts and bumper boats would have on the surrounding area because such activities would be prohibited on a C-2 site in any event.
As for the EPC's approval of Hinkle's site plan for the permissive uses (the miniature golf course and arcade), on December 4, 1991, the Land Use Planning and Zoning Committee heard the Neighborhood Association's appeal from the EPC approval and tabled the site plan. On January 15, 1992, the committee sent the site plan to the City Council. After several hearings the City Council remanded the site plan back to the EPC on March 2, 1992. The EPC again unanimously approved the site plan, causing the Neighborhood Association to appeal once more. On June 29, 1992, the City Council, having already ruled that go-carts and bumper boats are not conditional uses on C-2 property, voted five-to-three to remand to the EPC once again Hinkle's site plan for the permissive uses. The Council instructed the EPC not to hear the matter until (1) litigation concerning the conditional uses was resolved and (2) Hinkle proposed uses for the entire site, not just for the area planned for miniature golf and an arcade.
Having struck out with the City Council, Hinkle sought relief in state district court. Its second amended petition contained six counts. The first three counts sought relief from the City Council decisions rejecting Hinkle's proposed conditional usesgo-carts and bumper boats. Count IV sought declaratory and injunctive relief against the City's subjecting the proposed development to its shopping center regulations (which apply to sites containing five or more acres). Count V sought relief by writ of certiorari from the *479 Council decision to remand to the EPC for a third consideration of Hinkle's site plan for the permissive uses. Count VI sought damages for civil rights violations.
The flow of the case in district court was only slightly less complex than the proceedings before the City Council and its agencies. On September 28, 1992, the district court sent the parties a letter which stated in full: "Petitioner's Request Reference Counts, 1, 2, 3, 4, & 5 (amended petition) are denied."
Hinkle sought reconsideration. The district court reconsidered and on January 15, 1993, revised its ruling with respect to Count V. The court ordered the City Council to review Hinkle's plan for the miniature golf course and arcade without requiring Hinkle to submit a site plan for the entire 4.4 acres that had not yet been developed. The order concluded: "IT IS FURTHER ORDERED that this Court shall retain jurisdiction for future hearings as to Count V." On January 28, 1993, the court entered judgment against Hinkle on Counts I, II, III, and IV, but stated that the order was "not a final order for purposes of appeal."
On February 15 the Neighborhood Association filed a notice of appeal from the January 15 order. Later, apparently as a result of the City Council's approval on remand of the proposed miniature-golf-and-arcade development, Hinkle moved to dismiss without prejudice Count VI of its petition. On March 18, 1993, the district court dismissed Count VI without prejudice and added: "IT IS FURTHER ORDERED that there being no further matters pending before this Court, the Court's Judgment filed January 28, 1993 is, as of the date of the filing of this Order, final for purposes of any appeal from that Judgment." The Neighborhood Association filed another notice of appeal, and Hinkle appealed from the March 18 order, stating on the notice that the March order "made final the Judgment of January 28[.]"

II. DISCUSSION
The parties raise numerous issues in their briefs on appeal. Most are mooted by our rulings on other issues and will not be discussed in this opinion. The Neighborhood Association's appeal challenges the district court's remand to the City Council. Hinkle's cross-appeal challenges the district court's ruling affirming the Council decision that go-carts and bumper boats are not conditional uses in an area zoned C-2. Each party disputes our jurisdiction to hear the other party's appeal. We hold: (1) the Neighborhood Association's appeal must be dismissed because the appeal was not from a final, appealable order; (2) we have jurisdiction over Hinkle's appeal; (3) the City of Albuquerque zoning code is ambiguous as to whether go-carts and bumper boats are conditional uses in the C-2 zone, and the ambiguity should be resolved in the first instance by the Albuquerque City Council; and (4) the Council must reconsider its interpretation of the zoning code.

A. Jurisdiction to Review Neighborhood Association's Appeal
The Neighborhood Association's sole challenge to the district court's judgment regards the January 15, 1993, remand to the City Council pursuant to Count V. We hold that the remand order was not a final, appealable order. Before the Association would have the right to challenge that order on appeal to this Court, it would have to await the Council decision on remand, obtain review of the Council decision in district court, and then appeal the district court judgment.[2]
In general, the right to appeal is restricted to final judgments and decisions. See NMSA 1978, § 39-3-2 (Repl.Pamp.1991); Kelly Inn No. 102 v. Kapnison, 113 N.M. 231, 234-40, 824 P.2d 1033, 1036-42 (1992). The United States Supreme Court has declared that such a decision ordinarily is one that "`ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, *480 57 L.Ed.2d 351 (1978) (quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)); see Copeland v. Bowen, 861 F.2d 536 (9th Cir.1988). An order remanding for further non-ministerial proceedings before a lower tribunal does not satisfy that definition. See Copeland. "The litigation has not ended. It simply has gone to another forum and may well return again." Mall Properties v. Marsh, 841 F.2d 440, 441 (1st Cir.), cert. denied, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).
We recognize that "the term `finality' is to be given a practical, rather than a technical, construction." Kelly Inn, 113 N.M. at 236, 824 P.2d at 1038. But practical considerations only reinforce the view that remands to lower tribunals for further proceedings are not final decisions. To hold that such remands are final orders would create piecemeal appeals and appeals of matters that may be mooted by proceedings in the lower tribunal on remand. See Occidental Petroleum Corp. v. Securities & Exch. Comm'n, 873 F.2d 325, 328 (D.C.Cir.1989). If a party is dissatisfied with the decision on remand, it can obtain review of that decision in district court and then appeal an adverse district court decision. See Mall Properties, 841 F.2d at 443. Thus, review of the issues decided by the district court's order of remand "is not denied; it is simply delayed." Id.
We recently addressed this issue in Martinez v. New Mexico Taxation & Revenue Dep't, 117 N.M. 588, 874 P.2d 796 (Ct.App. 1994). In that case the district court had found the record of the proceeding before the motor vehicle division to be inadequate for review and therefore remanded the matter to the division to conduct a hearing at which a record sufficient for review would be made. We held that "an order of the district court remanding a cause to an administrative agency for a new hearing and preparation of a proper administrative record" is not "a final, appealable order that is subject to review by this Court[.]" Id. at 589, 874 P.2d at 797.
Martinez was founded on solid authority. The federal courts have adopted the general rule that a party has no right to appeal from a remand by a federal district court to an administrative agency for further proceedings. See generally Occidental Petroleum Corp., 873 F.2d at 328-32; 15B Charles A. Wright et al., Federal Practice and Procedure § 3914.32 (1992). Exceptions to the general rule are limited. Appeals appear to be permitted as of right only when they come within (1) the collateral order doctrine, which applies to all otherwise non-final orders, see generally Carrillo v. Rostro, 114 N.M. 607, 612-14, 845 P.2d 130, 135-37 (1992), and (2) what has been termed the doctrine of practical finality, see Travis v. Sullivan, 985 F.2d 919, 920-23 (7th Cir.1993). Under the doctrine of practical finality an appellate court will review a remand order if the issue raised on appeal would, as a practical matter, not be available for review after a decision on remand. See id. The most common occasion for application of the rule is an appeal by an administrative agency from a district court order remanding the matter to the agency. If the agency could not appeal the order, it would need to follow the court's directions on remand (or risk contempt of court) and the agency's ultimate decision could not be appealed by the agency itself. See Sullivan v. Finkelstein, 496 U.S. 617, 625, 110 S.Ct. 2658, 2663-64, 110 L.Ed.2d 563 (1990) (permitting appeal from remand order by secretary of health and human services, noting "should the Secretary on remand undertake the inquiry mandated by the District Court and award benefits, there would be grave doubt ... whether he could appeal his own order").
Our review of decisions in other states reveals support for the federal approach. Interestingly, the state decisions rarely refer to decisions in other jurisdictions, including decisions by the federal courts, yet a strong majority view appears to have emerged. See also 73A C.J.S. Public Administrative Law and Procedure § 261, at 396 (1983). Although our research has not been exhaustive and the rule in some jurisdictions is not always clear to us, we attempt to classify the jurisdictions where we have found pertinent case law.
Several jurisdictions have held that a trial court remand to an administrative agency for further proceedings is not an appealable *481 judgment. City & Borough of Juneau v. Thibodeau, 595 P.2d 626, 629-30 (Alaska 1979) (although party may invoke supreme court's discretionary review jurisdiction); Bridges v. Arkansas Motor Coaches, 256 Ark. 1054, 511 S.W.2d 651, 653 (1974) (but reviewing the lower court decision on certiorari); Freeman Truck Line v. Merchants Truck Line, 604 So.2d 223 (Miss.1992); Boyle v. Trump, 584 S.W.2d 119 (Mo.Ct.App. 1979); Nevada Taxicab Auth. v. Greenspun, 109 Nev. 1022, 862 P.2d 423 (1993); Paxton v. Crabtree, 184 W.Va. 237, 400 S.E.2d 245, 249-50 (1990); cf. In re Maple Tree Place, 156 Vt. 494, 594 A.2d 404, 405 (1991) (appellate court's review of remand as an interlocutory review). See also Sloan v. Board of Review, 781 P.2d 463 (Utah Ct.App.1989) (remand by commission is not final order; cites cases in which remand was by court).
Several courts that have adopted this view have noted that if, however, the remand to the agency is solely to perform a ministerial function, the trial court judgment is appealable. Byrd v. Sorrells, 265 Ala. 589, 93 So.2d 146 (1957); Lieberman v. Board of Labor Relations, 216 Conn. 253, 579 A.2d 505, 514-15 (1990); DiSabatino Bros. v. Wortman, 453 A.2d 102, 104 n. 3 (Del.1982); Revenue Cabinet v. Moors Resort, 662 S.W.2d 219, 220 (Ky.1983); Federman v. Board of Appeals, 35 Mass.App.Ct. 727, 626 N.E.2d 8, 10-11 (1994) (although Massachusetts Appellate Court has discretion to entertain an appeal that is not from a final judgment, McCarthy v. Civil Serv. Comm'n, 32 Mass.App.Ct. 166, 587 N.E.2d 791, 793 n. 5 (Mass.App.Ct. 1992)); North Am. Holding Corp. v. Murdock, 6 A.D.2d 596, 180 N.Y.S.2d 436, 439 (1958), aff'd 6 N.Y.2d 902, 190 N.Y.S.2d 708, 160 N.E.2d 926 (1959); cf. Wheeler v. Maine Unemployment Ins. Comm'n, 477 A.2d 1141, 1145 (Me.1984) (remand is appealable if remand "requires only that the court or agency address a procedural or ancillary matter distinct from the issue upon which appeal ... is sought"). But cf. State Comm'n for Human Rights v. Lieber, 23 N.Y.2d 253, 296 N.Y.S.2d 319, 244 N.E.2d 24 (1968) (allowing appeal by agency pursuant to statute granting right to appeal from interlocutory judgments).
Some state courts adopting the majority view have also explicitly noted that there may be an appeal in exceptional circumstances, as when a substantial right of a party could not be vindicated upon appeal from a final judgment after remand, apparently adopting something like the collateral order doctrine or practical finality doctrine. Holton Transp. v. State Corp. Comm'n, 10 Kan.App.2d 12, 690 P.2d 399 (1984); Fruchtzweig v. Southern Specialty Sales Co., 149 So.2d 623 (La.Ct.App.1963) (can appeal to prevent irreparable injury); Jennewein v. City Council, 46 N.C.App. 324, 264 S.E.2d 802, 803 (1980); Kramer v. Zoning Hearing Bd., 163 Pa.Cmwlth. 559, 641 A.2d 685, 687 n. 3 (1994); Anderson v. Nash Finch Wholesale Fruit & Grocery Co., 88 S.D. 59, 215 N.W.2d 125, 128-29 (1974); cf. Municipal Servs. Corp. v. North Dakota, 483 N.W.2d 560, 561 (N.D.1992) (granting agency's appeal from remand order because otherwise district court decision on legal question would be "effectively unreviewable").
Some courts holding that remands are not final, appealable judgments may have relied on the fact that the trial court retained jurisdiction while the matter was remanded to the agency, Howell v. Harden, 231 Ga. 594, 203 S.E.2d 206, 208 (1974); Doyle v. City of Crystal Lake, 183 Ill.App.3d 405, 132 Ill.Dec. 233, 237, 539 N.E.2d 796, 800 (Ill.App.Ct. 1989); cf. Sander v. Planning Bd., 140 N.J.Super. 386, 356 A.2d 411, 413 (App.Div. 1976) (raising issue but granting leave for interlocutory appeal in any event), although nonfinality under federal law does not depend on whether the district court retained jurisdiction pending agency action on remand. See American Haw. Cruises v. Skinner, 893 F.2d 1400, 1403 (D.C.Cir.1990).
On the other hand, some states have treated trial court remands to an agency for further proceedings as final, appealable orders. Some of these decisions are entitled to little weight because this issue of appellate jurisdiction is not discussed in the opinion. E.g., Traverse Oil Co. v. Chairman, Natural Resources Comm'n, 153 Mich.App. 679, 396 N.W.2d 498 (1986); Browning-Ferris, Inc. v. Johnson, 644 S.W.2d 123 (Tex.Ct.App.1982) (discussing finality of remand order, but issue *482 discussed was fact that remand was only on some issues); see Hall v. Hall, 115 N.M. 384, 386, 851 P.2d 506, 508 (Ct.App.1993) (noting that New Mexico appellate courts have reviewed non-final orders without discussing appellate jurisdiction). Other state courts appear to hold squarely contrary to the federal courts, although they have not discussed federal case authority. M & M Auto Storage Pool v. Chemical Waste Management, 164 Ariz. 139, 791 P.2d 665, 666-67 (App.1990) (perhaps relying on specific statute relating to appeal from "special actions"); Scott v. City of Englewood, 672 P.2d 225, 226 (Colo.Ct.App.1983); H & V Eng'g v. Idaho State Bd. of Professional Eng'rs & Land Surveyors, 113 Idaho 646, 747 P.2d 55, 57 (1987) (appellate rule specifically authorizes appeals of remands); Barnes v. Iowa Dep't of Transp., 385 N.W.2d 260, 262 (Iowa 1986); Schultz v. Pritts, 291 Md. 1, 432 A.2d 1319, 1322-23 (1981); County of Douglas v. Burts, 2 Neb.App. 90, 507 N.W.2d 310, 312 (1993) (dictum); Bearns v. Department of Indus., 102 Wis.2d 70, 306 N.W.2d 22 (1981); WYMO Fuels v. Edwards, 723 P.2d 1230, 1235 (Wyo. 1986). We are not certain what the rule is in California. Compare Newman v. State Personnel Bd., 10 Cal.App.4th 41, 12 Cal.Rptr.2d 601 (1992) (reviewing appeal from remand order; no discussion of jurisdiction) and City of Carmel-By-The-Sea v. Monterey County Bd. of Supervisors, 137 Cal.App.3d 964, 187 Cal.Rptr. 379, 383 (1982) (Board had right to appeal earlier order remanding matter to Board) with Kumar v. National Medical Enters., 218 Cal.App.3d 1050, 267 Cal.Rptr. 452 (1990) (appeal dismissed; appellant must exhaust administrative remedies after remand before returning to court).
Following Martinez, we agree with the rule adopted by the federal courts and the apparent majority of state courts and hold that the Neighborhood Association does not have the right to appeal the district court's remand to the City Council for further proceedings relating to Count V of the petition. Neither the collateral order doctrine nor the rule of practical finality would assist the Neighborhood Association in this appeal. If the Association was dissatisfied with the action of the Council on remand (either because of the restrictions imposed by the district court on the Council or because of the Council's independent decisions), the Association should have sought review of that decision in district court. Any action by the district court with respect to Count V, either before or after remand, could be reviewed by appeal to this Court after the district court ruled after remand. See Copeland, 861 F.2d at 538-39.
We recognize that the ground for dismissing the Association's appeal from the remand order is a subtle oneone that is probably unfamiliar to most attorneys. Our intent, however, is not to set traps for the unwary but to follow rules that expedite litigation. In some circumstances we might not impose the Martinez rule to defeat appellate review because of an appellant's action or inaction that predated Martinez. See In re Estate of Newalla, 114 N.M. 290, 296, 837 P.2d 1373, 1379 (Ct.App.1992). Nevertheless, we do not refrain from applying the rule to the present appeal. What is striking here is that the Association apparently anticipated the rule when the district court originally ordered a remand. In a pleading filed in district court on February 9, 1993, the Association wrote: "[I]f Count V is remanded and reconsidered by the City Council in violation of the Judgment in Count I, (a Judgment which cannot be appealed by the Petitioners), [the Association] will have to appeal the City Council's ruling on Count V back to this Court no matter what the outcome is in order to protect its right to appeal the Order." Consequently, there is no inequity in applying to this case the rule that a district court remand to an agency for further proceedings is ordinarily not an appealable order.
We therefore dismiss the Neighborhood Association's appeal. No issues remain before us concerning Hinkle's development of its site for miniature golf and an arcade.

B. Jurisdiction to Review Hinkle's Appeal
The Neighborhood Association raises one argument regarding the timeliness of Hinkle's notice of appeal. The Association contends that the district court's final order was the letter of September 28, 1992, which *483 was filed in district court on September 29. If that is correct, Hinkle's March notice of appeal was untimely. We reject the contention for three reasons.
First, we refuse to construe as an order or judgment a letter that begins: "Dear Mr. Campbell, Ms. Fudge, Ms. Dietz & Mr. Bryan:" and concludes with "Very truly," immediately above the district judge's signature. To construe such a document as an order or judgment would destroy common expectations of the legal community and generate substantial confusion. See Bouldin v. Bruce M. Bernard, Inc., 78 N.M. 188, 429 P.2d 647 (1967) (appeal must be from a formal written order or judgment); cf. Hernandez v. Home Educ. Livelihood Program, 98 N.M. 125, 126, 645 P.2d 1381, 1382 (Ct.App.) (parties and the court did not consider court's "order" to be a final order), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982).
Second, the letter cannot constitute an appealable order because it does not include any decretal language. See Thornton v. Gamble, 101 N.M. 764, 766-67, 688 P.2d 1268, 1270-71 (Ct.App.1984) (judgment contains finding and conclusion approving custody agreement but judgment is not final because decretal portion says nothing concerning custody).
Finally, the letter could not constitute a final, appealable order because it did not address Count VI of the petition. An order that adjudicates fewer than all the claims between the parties is not final. SCRA 1986, 1-054(C) (Repl.1992).
A more troubling question regarding Hinkle's notice of appeal is whether it was from a final, appealable order or judgment. Because this is a matter of appellate jurisdiction, we raise the issue ourselves. See Pacheco v. Pacheco, 82 N.M. 486, 484 P.2d 328 (1971).
As previously noted, an order is ordinarily not final and appealable unless the trial court has disposed of the case to the fullest extent possible. See Kelly Inn, 113 N.M. at 236, 824 P.2d at 1038. The January 28, 1993, judgment disposed of Counts I, II, III, and IV, and the March 18, 1993, order disposed of Count VI. But the January 15, 1993, order, although deciding Count V by ordering a remand to the City Council, included the language: "this Court shall retain jurisdiction for future hearings as to Count V." Thus, the January 15 order did not fully dispose of Count V.
Given that the January 15 order did not fully dispose of Count V, how could the March 18 order state that the January 28 judgment had become final for purposes of appeal? Although a court may enter a final, appealable judgment as to fewer than all of the counts in a petition, it can do so "only upon an express determination that there is no just reason for delay." SCRA 1-054(C)(1). The district court made no such determination here.
We can discern only one way to reconcile the retention of jurisdiction in the January 15 order with the statement in the March 18 order that the January 28 judgment had become final. Implicit in the March 18 order must have been the district court's withdrawal of its retention of jurisdiction with respect to Count V. How else to understand the court's language: "no further matters pending before this Court, the [January 28 judgment] is, as of the date of the filing of this Order, final for purposes of any appeal"? (Emphasis added.) We interpret the March 18 order accordingly and therefore determine that the March 18 order did indeed render final the January 28 judgment.
We realize that as of March 18, 1993, it may still have been possible that matters relating to Count V would return to the district court upon a petition for review of the City Council decision on remand. Thus, one could argue that in some sense there could be no final order until the record established that there would be no further proceedings on Count V. Nonetheless, we take a practical view of the matter. See Kelly Inn, 113 N.M. at 236, 824 P.2d at 1038. The decision on the first four counts would not be affected by a decision on Count V. Because there might never be any further district court consideration of Count V (which was in fact the case), the district court decision on the other counts was final and appealable on March 18, 1993. See In re Newalla, 114 *484 N.M. at 293, 837 P.2d at 1376 (one reason for holding that order in probate case is final and appealable is that the estate may be closed without any further order).
We add one cautionary note. Retention of jurisdiction during remand can, as in this case, create a myriad of problems unless the remanding court places clear limitations on how it will become reinvolved. See Gulliver v. Dalsheim, 739 F.2d 104, 106 (2d Cir.1984); United States v. Jacobson, 15 F.3d 19 (2d Cir.1994). A court should not lightly decide to retain jurisdiction. We need not decide whether the district court even had authority to retain jurisdiction in this case.

C. Conditional-Use Issue
We next discuss the proceedings relating to Hinkle's pursuit of a conditional use permit for go-carts and bumper boats. Because Hinkle cannot obtain such a permit if go-carts and bumper boats are not conditional uses on property zoned C-2, the first step in the analysis is to construe Albuquerque's zoning code. Hinkle challenged the City's construction of the zoning code in Count I of its second amended complaint, which sought a writ of certiorari from the district court. The district court should have granted the writ if the City Council had acted illegally, see Concerned Residents for Neighborhood Inc. v. Shollenbarger, 113 N.M. 667, 671, 831 P.2d 603, 607 (Ct.App.1991), overruled on other grounds by Regents of Univ. of N.M. v. Hughes, 114 N.M. 304, 310, 838 P.2d 458, 464 (1992), as would be the case if the Council's interpretation of the zoning code was incorrect. Construction of the ordinance is, of course, a matter of law. The City therefore errs when it suggests that we review the Council decision only to determine whether it was supported by substantial evidence. The substantial-evidence standard, and the related whole-record-review standard, are used to review factual findings, not questions of law. See Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd., 101 N.M. 291, 292-94, 681 P.2d 717, 718-20 (1984).
If the zoning code is unambiguous, this Court will construe it. On the other hand, if it is ambiguous, ordinarily we would defer to the interpretation of the code by the City Council, which is the body that enacted the code. See Thomas Jefferson Univ. v. Shalala, ___ U.S. ___, ___, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) ("We must give substantial deference to an agency's interpretation of its own regulations.... [T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation."); Bienz v. City of Dayton, 29 Or.App. 761, 566 P.2d 904, 918 (1977); TBCH, Inc. v. City of Albuquerque, 117 N.M. 569, 572, 874 P.2d 30, 33 (Ct.App.1994) (Hartz, J., dissenting). We hold that the applicable provision of the code is ambiguous. For a variety of reasons, however, we cannot defer to the Council decision of March 12, 1993, interpreting the code. We first discuss why we find the code ambiguous, and then we explain why we order a remand to the Council for further consideration of the meaning of the code.

1. Ambiguity of Zoning Code
Section 7-14-22 of the City of Albuquerque Comprehensive City Zoning Code governs "C-2 Community Commercial Zone." Subsection B lists various conditional uses. Hinkle relies on paragraph 13 of that subsection, which states as a conditional use:
Outside storage or activity, except as specifically made a permissive use. Such conditional uses often justify special requirements to keep the appearance or other aspects of the outdoor storage or activity from negatively impacting adjacent land. Outdoor vehicle storage as a principal business, where vehicles are typically not moved for one week or more, is not appropriate if it will be significantly visible from adjacent streets or nearby residential, office, or commercial uses; if approved, this type of storage requires special buffering.
Hinkle makes a straightforward argument: because the only modifier of "activity" in paragraph 13 is the adjective "outside," any type of outside activity that is not already a permissive use is a conditional use. Hinkle supports its interpretation with (1) a declaratory ruling in the 1985 edition of the City's Zoning Procedures Manual which indicates *485 that all outside activities may be conditional uses in a C-2 zone and (2) testimony in the record that the language of the code had been interpreted on several occasions to permit go-carts in a C-2 zone. Hinkle's argument has substantial force.
Nevertheless, there are also forceful arguments that the words "[o]utside storage or activity" should not be read literally but mean "outside storage or related activity." Supporting this view is the first sentence of Section 7-14-22, an introductory paragraph that states: "This zone provides suitable sites for commercial activities, and certain specified outside storage." In addition, including all outside activity as part of paragraph 13 would be peculiar drafting style. First, most of the paragraph deals specifically with storage. Why insert all outside activity in the same paragraph? Second, the other paragraphs in the subsection have a much narrower focus than outside activity as a whole. For example, the nine paragraphs after paragraph 13 relate to parking of truck tractors, park-and-ride joint-use facilities, pony riding without stables, retail sales of alcoholic drink for consumption off premises, public utility structures, retail business including manufacturing and assembly as an accessory use, tire recapping, transfer or storage of household goods, and uses or activities in a tent. If all outside activity is a conditional use, one would expect such a catch-all to be treated in a separate paragraph, probably the final paragraph of the subsection.
There is also some "legislative history" supporting the City's view. The present language of paragraph 13 first appeared in the zoning code in 1976. The language was part of a general revision of the zoning code proposed by the Albuquerque/Bernalillo County Planning Department in 1974. A publication summarizing and explaining the proposal contains a chart listing new conditional uses for areas zoned C-2. Included in the list is "[o]utside storage, if not permissive." There is no reference to "outside activity." See Albuquerque, N.M., Proposed General Revision Comprehensive City Zoning Ordinance, at vi (May 1974).
Perceiving good arguments for the positions of both the City and Hinkle, we find the code ambiguous as to whether all outside activities are conditional uses in areas zoned C-2. As stated above, ordinarily in this circumstance we would defer to the City Council's interpretation of its own zoning code. At its hearing on March 12, 1993, the Council ruled that go-carts and bumper boats are not conditional uses in areas zoned C-2, thereby implicitly interpreting the code as not including outside activities in general as conditional uses in that zone.
Nevertheless, we do not at this time adopt that interpretation of the code. Instead, we reverse the district court judgment and order the district court to remand the matter to the Council for a new hearing regarding the meaning of the code. We now explain our concerns about the decision by the Council.

2. Reasons for Remand
There are sound reasons why this Court should ordinarily defer to an agency's interpretation of its own enactments. The agency should have far greater knowledge and expertise than this Court regarding the inter-relationships among the various provisions of the enactment and the underlying philosophy and policy. In addition, the agency has superior resources in uncovering and evaluating the facts pertinent to a proper interpretation, such as the legislative history and the manner in which the enactment has been applied since it went into effect.
But deference is not always appropriate, even when the enactment under consideration is clearly ambiguous. Despite the advantages that an agency has over a court in interpreting the agency's own enactment, a court should not defer if those advantages did not play a role in the agency's decisionmaking process. For example, a court should not defer if the agency, rather than using its resources to develop the facts relevant to a proper interpretation, ignores the pertinent facts, or if the agency, rather than using its knowledge and expertise to discern the policies embodied in an enactment, decides on the basis of what it now believes to be the best policy. When the *486 record before the reviewing court generates genuine doubt concerning whether the agency's interpretation merits deference, the best course is to remand the matter to the agency for reconsideration. See Puerto Rico Higher Educ. Assistance Corp. v. Riley, 10 F.3d 847, 853-54 (D.C.Cir.1993) (Ginsburg, J., concurring in part and dissenting in part). We recognize that the agency may have in fact rendered its interpretation in an ideal fashion even though the record raises genuine concerns; yet, the additional effort required by a remand is appropriate to improve confidence in the decisionmaking process. The purpose of remand is not to require a different result. A decision identical to the original decision may well be affirmable, but because the process, as well as the result, is of high importance, sometimes it is the process, rather than the result, that justifies remand and reconsideration.
In this regard, one additional consideration also deserves discussion. For a court to defer to an agency's interpretation of an enactment is in a sense to delegate part of a court's judicial function to the agency. It is therefore appropriate that a court withhold deference to the agency's interpretation unless the agency decisionmakers are held to ethical standards comparable to those that govern a court in performing the same function. If a court defers to an agency interpretation of its own enactment when those rendering the decision fail to meet judicial standards of impartiality, then the fairness of the court's decision is called into question. In general, a judge should be disqualified from deciding a matter "if an objective observer would entertain reasonable questions about the judge's impartiality." Liteky v. United States, ___ U.S. ___, ___, 114 S.Ct. 1147, 1162, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring). The test is an objective one, "so that what matters is not the reality of bias or prejudice but its appearance." Id. at ___, 114 S.Ct. at 1154 (majority opinion). "`[J]ustice should not only be done, but should manifestly and undoubtedly be seen to be done.'" Id. at ___, 114 S.Ct. at 1162 (Kennedy, J., concurring) (quoting Ex parte McCarthy [1924] 1 K.B. 256, 259 (1923)). We should apply the same objective test when deciding whether to defer to an agency's interpretation.[3]
We now turn to the specifics of this case. We begin by quoting the City Council's findings in support of its March 16, 1992, ruling that the zoning code does not include go-carts or bumper boats as conditional uses in the C-2 zone:
1. Go-carts, bumper boats, or other motorized vehicle entertainment are not named as permissive or conditional uses in the C-2 zone. The City has not had a practice of considering these uses to be permissive or conditional uses in the C-2 zone.
2. It is not legislative intent that go-carts, bumper boats, or other motorized vehicle entertainment can be considered as permissive or conditional uses in the C-2 zone.
3. Go-carts, bumper boats, or other motorized vehicle entertainment are special because of infrequent occurrence, effect on surrounding property, safety hazard and/or other reasons, in which the appropriateness of the use to a specific location is partly or entirely dependent on the character of the site design and mode of operation. Such uses are intended to be restricted to the SU-1 zone.
There are three reasons why remand is preferable to our deferring to the Council's decision. Perhaps none of the reasons by itself would require a remand; taken together, however, they indicate that justice can best be served by a remand.
First, on remand the Council could develop a clearer factual record on prior City interpretations of the pertinent language of the zoning code. Prior agency construction of ambiguous language in legislation is often *487 deemed persuasive in construing the legislation. See Texas Nat'l Theatres v. City of Albuquerque, 97 N.M. 282, 286, 639 P.2d 569, 573 (1982). Here, the Council found that the "City has not had a practice of considering these uses [go-carts, bumper boats, or other motorized vehicle entertainment] to be permissive or conditional uses in the C-2 zone." Yet, at the hearing before the EPC, Zoning Enforcement Officer Robert Romero defended his declaratory ruling in part by pointing to prior occasions on which go-carts had been allowed in the C-2 zone. Although a neighborhood spokesman testified that the precedents were distinguishable, Romero disagreed. The argument was repeated at the March Council hearing, but no sworn testimony was offered. Nothing in the present record indicates any reason why the Council should credit the assertions by the Neighborhood Association representative challenging the description by the Zoning Enforcement Officer (who should have the greatest knowledge of the matter) of the zoning of the sites where go-carts had been permitted. Remand for further proceedings will enable the Council to develop fully the record regarding prior practice.
Second, remand is appropriate because of indications in the record that the Council reached its decision in March 1992 based on its current views of proper policy rather than by interpreting the language of the previously enacted zoning code. One indication is the Council's second finding, which states that "it is not legislative intent...." The issue, however, was not the legislative intent of the Council in March 1992. The issue was the meaning of the zoning code as enacted. For the Council to give new meaning to the previously enacted code would in effect amend the code. Of course, amendment of ordinances is a proper Council function, but retroactive amendment is ordinarily improper. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 206-12, 109 S.Ct. 468, 471-72, 102 L.Ed.2d 493 (1988). The Council should not be permitted to achieve retroactivity through the back door by changing the meaning of an ordinance while leaving the language the same.
The wording of the finding might be explained as simply a matter of imprecision in language. But the conduct of the March 16 proceeding reinforces concern about whether the Council was setting public policy, rather than determining what policy had been set by the zoning code. The attorney for the Neighborhood Association, the appellant before the Council, repeatedly argued that the proceeding would enable the Council to set policy for the future about the use of the C-2 zone. Indeed, at the very outset of her presentation she offered into evidence a letter from Blue Cross and Blue Shield of New Mexico, whose building would border the Hinkle development, stating that it would consider moving its offices to another city if the go-cart development were permitted. The letter (which was not admitted into evidence) would have absolutely no relevance to the proper interpretation of the zoning code and was undoubtedly offered in support of a policy argument. The presentation in support of the Neighborhood Association also included similar matters relevant to policy but not to proper interpretation of the zoning code, such as (1) statements by neighbors of the proposed development objecting to the potential injury to the neighborhood and (2) a demonstration of support by leaders of other neighborhood associations in the City. Numerous written submissions to the Council likewise addressed the merits of the proposed project, rather than the meaning of the code.[4] Individual councilors said little about their reasons for voting for the interpretation of the zoning code adopted at the meeting, but it is noteworthy that one councilor, after agreeing with the attorney for Hinkle that counting heads was inappropriate, added "but ignoring the people also is not appropriate." Also, after the vote one councilor appealed for the same enthusiasm from neighborhood associations when similar issues arise in other parts of the City.
*488 Moreover, the Council's findings in no way addressed the pertinent language of the zoning code. No mention is made of how "or other outside activity" should be interpreted. This despite the fact that the Council was reversing interpretations of the zoning code adopted by the City Zoning Enforcement Officer, the EPC, and the Council's own Land Use Planning and Zoning (LUPZ) Committee (four of the five committee members voted at the February 26 committee meeting that bumper boats and go-carts are C-2 conditional uses but reversed themselves at the March 16 Council meeting). Courts generally show little deference to an agency's interpretation of its own statute when the interpretation is an unexplained reversal of a previous interpretation or consistent practice. See INS v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30, 107 S.Ct. 1207, 1221 n. 30, 94 L.Ed.2d 434 (1987); Atchison, T. & S.F. Ry. v. Wichita Bd. of Trade, 412 U.S. 800, 808, 93 S.Ct. 2367, 2376, 37 L.Ed.2d 350 (1973) (agency has "duty to explain its departure from prior norms"). See generally Thomas Jefferson Univ., ___ U.S. at ___ _ ___, 114 S.Ct. at 2388-89; id. at ___ n. 3, 114 S.Ct. at 2392 n. 3 (Thomas, J., dissenting). What is particularly striking in this regard is that the reason that the Council on February 3, 1992, remanded the matter to its LUPZ Committee was the city attorney's expressed difficulty in preparing a finding that would justify a Council decision that go-carts and bumper boats are not "outside activity" within the meaning of the zoning code. In short, the record raises genuine doubts regarding whether the Council decision reflected an interpretation of the zoning code as opposed to a policy decision regarding proper zoning.
There is a third reason not to defer to the Council's interpretation of the zoning code. One of the Councilors who played an active role in the Council deliberations (in fact, the Councilor proposed the findings adopted by the Council and had circulated to other members of the Council a highlighted copy of the Blue Cross Blue Shield letter that was later not admitted into evidence at the hearing) was a former president of the Neighborhood Association and the Councilor's spouse had signed a petition opposing the Hinkle development.[5] There is a dispute in the record as to whether the Councilor was still a member of the Neighborhood Association at the time the Association initiated its appeal of the declaratory ruling.[6] In our view, if the interpretation of the zoning code had been before a court presided over by a judge in the same position as this Councilor, "an objective observer would entertain reasonable questions about the judge's impartiality." Liteky, ___ U.S. at ___, 114 S.Ct. at 1162 (Kennedy, J., concurring). See SCRA 1986, 21-200(A) (Repl. 1994) ("A judge ... shall conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); cf. SCRA 1986, 21-400 (Repl.1994) ("A judge is disqualified and shall recuse himself in any proceeding in which:... (D) ... He or his spouse, or a person within the third degree, by blood, marriage or other relationship to either of them: (1) is *489 a party to the proceeding ...; (3) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (4) is to the judge's knowledge likely to be a material witness in the proceeding[.]"). See also Sierra Club v. Simkins Indus., 847 F.2d 1109, 1116-18 (4th Cir.1988) (trial judge, who had once belonged to Sierra Club but had not belonged for thirteen years before case commenced, had offered to recuse himself; the prior membership did not form a basis for reasonably questioning judge's impartiality). For the reasons expressed above, it would be inappropriate for a court to defer to an interpretation of the zoning code by a Councilor whose relationship to the subject matter would bar a judge from deciding the issue. Although the other eight Councilors arrived at the same ruling, there is authority to the effect that participation by one disqualified member renders a proceeding invalid, even though the disqualified member's vote was not needed for passage. See Piggott v. Borough of Hopewell, 22 N.J.Super. 106, 91 A.2d 667, 670 (Law Div.1952). This approach may be appropriate because of the influence of the disqualified member on other members. See American Cyanamid Co. v. F.T.C., 363 F.2d 757, 767-68 (6th Cir.1966). But see Schumacher v. City of Bozeman, 174 Mont. 519, 571 P.2d 1135, 1142 (1977) (noting cases holding that a vote of a disqualified commissioner did not void the entire proceeding). We need not decide in this case whether the involvement of this Councilor would, in itself, require a remand. That involvement is, however, an important factor supporting remand.
For the above reasons, we believe that the better course is for the City Council to conduct a new hearing to determine the proper interpretation of Section 7-14-22 of the zoning code.

III. CONCLUSION
We dismiss the appeal of the Embudo Canyon Neighborhood Association. We reverse the district court's decision affirming the City Council ruling that go-carts and bumper boats are not conditional uses on sites zoned C-2. We remand to the district court with instructions to remand to the City Council for a new public hearing regarding whether go-carts and bumper boats are conditional uses in a C-2 zoned site. The City Council may receive additional evidence at the hearing. If the City Council rules that go-carts and bumper boats are conditional uses, further proceedings may be conducted regarding Hinkle's request for a conditional use permit. No costs are awarded.
IT IS SO ORDERED.
MINZNER, C.J., and FLORES, J., concur.
NOTES
[1] We first filed an opinion in this case on August 1, 1994. In response to the motion for rehearing by the Intervenor-Appellant, we withdraw that opinion, substitute this one, and deny the motion.
[2] The Association could, of course, have sought discretionary review of the interlocutory order pursuant to NMSA 1978, Section 39-3-4 (Repl. Pamp.1991), and SCRA 1986, 12-203 (Repl. 1992). See 28 U.S.C.A. § 1292(b) (West 1993); 15B Charles A. Wright et al., Federal Practice and Procedure § 3914.32, at 239 (1992).
[3] Of course, the great bulk of a city council's work does not involve interpretation of ambiguous ordinances. Often it is inappropriate to consider whether city councilors observed judicial ethical standards. See City of Fairfield v. Superior Court, 14 Cal.3d 768, 122 Cal.Rptr. 543, 550-51, 537 P.2d 375, 382-83 (1975) (en banc) (councilmen could vote on whether to grant use permit for shopping center even if they had expressed opposition prior to hearing; zoning ordinance prescribed no specific standards for grant of permits).
[4] Some of these submissions were apparently ex parte communications in violation of City ordinances governing the fair conduct of hearings. Because these submissions are similar in substance to many proper submissions and therefore may not have been prejudicial, we do not decide whether this apparent violation of the rules would require reversal.
[5] Some of the evidence relating to the Councilor is deposition testimony. The Association challenges the propriety of the depositions, contending that judicial review of the Council decision must be based solely on the record before the Council. In the specific circumstances here, however, discovery (at least to the extent of the matters referred to in this opinion) was appropriate to determine whether improprieties not disclosed by the record would invalidate the Council's action. See Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1548-50 (9th Cir.1993); Professional Air Traffic Controllers Org. (PATCO) v. Federal Labor Relations Auth., 672 F.2d 109 (D.C.Cir.1982). Although ordinarily it would be preferable for a district court to remand the matter to the agency for discovery and development of the factual record, see Portland Audubon Soc'y, 984 F.2d at 1549; PATCO, 672 F.2d at 113, the absence of mechanisms for such discovery before the City Council justified district court discovery in this case. We note that the discovery referred to in this opinion did not relate to the mental processes of the City Councilor. Inquiry into a decisionmaker's mental processes should usually be avoided. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).
[6] We note that the Neighborhood Association has submitted to this Court an affidavit by its president stating that the Councilor's membership expired on September 1, 1991, and the Councilor decided not to renew membership after being elected to the City Council in October 1991.