882 P.2d 14

### The SOUTHLAND CORPORATION, Plaintiff–Appellee,

v.

**Jerry MANZAGOL, Superintendent of the New Mexico Regulation and Licensing Department, et al., Defendants–Appellants.**

No. 21497.

Supreme Court of New Mexico.

Sept. 9, 1994.

Tom Udall, Atty. Gen. and Karl O. Wyler, Asst. Atty. Gen., Santa Fe, for appellants.

Sutin, Thayer & Browne, P.C., Jonathan B. Sutin, Albuquerque, for appellees.

## OPINION

FRANCHINI, Justice.

■ The Director of the Alcohol and Gaming Division of the New Mexico Regulation and Licensing Department appeals from a district court order vacating three Division orders each disapproving the transfer of a liquor license in the City of Albuquerque. The orders were precipitated by the transfer of a substantial portion of the ownership of stock in The Southland Corporation. The issues before this Court are (1) whether the Director must disapprove an application for transfer when the municipality giving notice of its disapproval fails to comply with a mandate of the Liquor Control Act or to support its disapproval with substantial evidence, and (2) whether the Director's order disapproving the transfers in this case was itself supported by substantial evidence.[1] We hold that under the Liquor Control Act, see NMSA 1978, § 60–3A–1 (Repl.Pamp.1994) (listing articles of Chapter 60 included in the Act), the Director may approve a transfer of a license despite municipal disapproval. The Director must so act if the governing body fails to submit evidence supporting its decision or if, on its face, the governing body's decision is not based on evidence pertaining to the specific prospective transferee or location. Consequently, we also hold that the Division orders were not supported by substantial

---

1. The Director's first·issue on appeal, whether Southland could appeal the Division order to the district court under NMSA 1978, Section 60–6B–2(M) (Repl.Pamp.1987) (now recodified as Section 60–6B–2(Q)) has been answered affirmative-ly by our opinion in *Regents of the University of New Mexico v. Hughes,* 114 N.M. 304, 310, 838 P.2d 458, 464 (1992). We also do not address the issue of whether a transfer of stock ownership requires approval by a governing body.

evidence and must be vacated. We affirm the trial court.

*Facts and proceedings.* Southland is a Texas corporation authorized to do business in New Mexico as 7–Eleven Stores. The corporation owns and operates fifteen liquor licenses in Albuquerque. In 1990, Southland notified the Director, as required by Section 6–6B–6(A), of a change in the ownership of more than ten percent of Southland's voting stock. The proposed new stock owners are Japanese investors. After the Division conducted an investigation and held a public hearing, the Director granted preliminary approval of the transfer.

Pursuant to Section 60–6B–4(A), the Director notified the City of Albuquerque of the Division's preliminary approval. The City then conducted public hearings regarding the transfer. At three of the hearings, representatives from neighborhood associations apparently testified that they were dissatisfied with Southland's failure to carry out association requests. We say "apparently" because the City hearing officer failed to provide either the Director or the district court with a recording or transcribed minutes of the various hearings.

In each order the hearing officer made identical findings that "the protest testified that the transfer of this license would be detrimental to the public health, and safety of the area residents" and that "the management of this license has been unable to control the public safety of the area residents." He then concluded:

the area neighborhoods have attempted to work with the Southland Corporation ... for a number of years and all of no avail. Southland ... [has] ignored the demands of the area neighborhood and there is no evidence presented that the new owners while in Japan would attempt to work with the neighborhoods. Moreover, since the management will remain the same and the new owners of this establishment are located in the country of Japan it is difficult for this body to comprehend how the new owner would alleviate the problem.

It is for these reasons that the transfer of this license would be detrimental to the public health, safety and morals of the residents of the City of Albuquerque.

Upon receiving the City's notices of disapproval, the Director issued orders finally disapproving of the transfer. In them, he stated that the City had failed to send the Division the minutes of the public hearing as required by Section 60–6B–4(H) and that the City's failure to act in this manner

may constitute grounds to appeal or to obtain other judicial relief. Nevertheless, the Director feels bound by the wording of Section 60–6B–4(H) ... that says in part, "[i]f the governing body disapproves of the ... transfer of the license, the director shall disapprove the ... transfer of the license."

The Director then stated that he had "no information (including the [City's] Notice of Disapproval) before him that would cause or require the Director to withdraw his preliminary approval of the Application."

The district court vacated the orders after concluding that the Director should have approved the transfers notwithstanding the disapproval of the transfers by the City. The court found the City's disapproval to be void because it was not based upon substantial evidence and because the City failed to submit to the Director minutes of the public hearings as mandated by Section 60–6B–4(H)

■ *The Director must disregard disapproval by governing bodies that fail to support their orders with minutes of hearings that contain substantial evidence supporting their decision.* The Liquor Control Act represents a careful balancing of the interests of state and local government in the licensing process. After a municipality or county has decided by popular vote to adopt the local option provisions of the Act, *see* § 60–5A–1, the regulation and licensing department is given the power to issue licenses as authorized by the Act. Section 60–3A–7. That department has the initial responsibility for investigating the qualifications of the prospective licensee, making sure all the requirements of the Act are met, and holding a public hearing to gather further information about the specific licensee or location. *See* § 60–6B–2(F), (L).

In order to give the local option district some control in the licensing process, after preliminary approval by the Director, the local governing body has an opportunity to approve or disapprove the proposed action, but it may exercise this right only if it holds another public hearing. *See* § 60–6B–4(B), (C). A record must be made of this hearing. Section 60–6B–4(E). The record of the hearing must be sent to the Division along with the notice of disapproval from the governing body. Section 60–6B–4(H). If the local body fails to approve or disapprove the transfer within thirty days of the hearing, the Director may go forward with final approval of the license. Section 60–6B–4(G).

We believe that by mandating the hearing and record requirements and providing for final approval absent governing body approval, the Legislature intended that the Director should disregard local governing body disapproval that does not meet the requirements of the Act. Failure to comply with the mandates of Section 60–6B–4(H) invalidates a governing body's disapproval of a transfer. Likewise, the failure of the governing body to support its disapproval with substantial evidence that meets the standards articulated in *Dick v. City of Portales*, 118 N.M. 541, 543, 883 P.2d 127, 130 (1994), results in an invalid disapproval. The Director is not required to ratify an invalid disapproval of a transfer that otherwise meets all the requirements of the Act.

 *The City's order was not supported by substantial evidence.* As we said in *Dick*, an applicant makes a prima facie case of entitlement to approval by obtaining the Division's preliminary approval. *Id.* at 543, 883 P.2d at 130. The burden of disapproval is on the governing body. The governing body may disapprove a transfer of ownership only if individuals opposing the transfer provide "positive evidence" showing that the transfer would be detrimental to the morals of the community. *Id.* This evidence must be based upon authentic, relevant facts related to a specific prospective licensee. *Id.* at 543, 883 P.2d at 130. In this case, there is no evidence in the record at all to support the City's decision.

Even if we accepted the hearing officer's findings as evidence, the hearing officer's findings provide no connection with or proof that a partial stock transfer to the Japanese investors would be detrimental to the health, safety, or morals of the Albuquerque communities. Thus, the Division's orders also are not supported by substantial evidence and must be vacated. *See id.* at 543, 883 P.2d at 130.

*Conclusion.* We affirm the trial court and vacate the Division's orders. As in *Dick*, because the transfers have already been approved by the Division and "the Director may transfer [a] license without governing body approval after a hearing under Section 60–6B–4(G)," *Dick*, 118 N.M. at 134, 883 P.2d at 131, we remand to the Division for entry of orders approving transfer of the stock ownership as requested by Southland.

IT IS SO ORDERED.

BACA and FROST, JJ., concur.