926 P.2d 302

**CITY OF SANTA FE, Petitioner–Appellee,**

v.

**Marianne WOODARD, Director of the Alcohol and Gaming Division of the New Mexico Regulation and Licensing Department, Respondent–Appellee,**

v.

**AGUA FRIA, INC., Intervenor–Appellant.**

No. 23532.

Supreme Court of New Mexico.

Oct. 9, 1996.

Gerber, Ahern & Aikin, P.A., Linda L. Aikin, Santa Fe, for Intervenor–Appellant.

Mark A. Basham, City Attorney, Mark L. Allen, Assistant City Attorney, Santa Fe, for City of Santa Fe.

Tom Udall, Attorney General, Joel Cruz–Esparza, Assistant Attorney General, Santa Fe, for Respondent–Appellee.

## OPINION

McKINNON, Justice.

Agua Fria, Inc., appeals from a Santa Fe County District Court order reversing a decision of the New Mexico Alcohol and Gaming Division (Division) that approved Agua Fria's applications for a restaurant license to sell beer and wine, see NMSA 1978, § 60–6A–4 (Repl.Pamp.1994), and for a small brewer's license, see § 60–6A–26.1. The appeal was originally filed in the Court of Appeals, which certified three questions in this case: (1) Which appellate court has initial jurisdiction of appeals from district court regarding Division decisions? (2) Do *Dick v. City of Portales*, 118 N.M. 541, 883 P.2d 127 (1994), and *In re New Mexico Liquor License No. 4035*, 118 N.M. 545, 883 P.2d 131 (1994), apply when a specific location has never previously operated with a license? and (3) On the merits, to what extent are the specific objections of the community relevant to the issuance of a license under a *Dick* analysis? We hold that: (1) the Court of Appeals has initial jurisdiction of appeals from Division decisions, but for purposes of judicial economy, this Court will decide the merits of this case; (2) both *Dick* and *In re New Mexico Liquor License No. 4035* apply to new licenses as well as to transfers; and (3) the evidence presented at the hearing, on the whole record, does not satisfy the *Dick* requirement of positive and relevant evidence showing that issuance of the license would be detrimental to public health, safety, or morals.

### FACTS AND PROCEEDINGS BELOW

On December 12, 1994, the Division granted preliminary approval of Agua Fria's applications, thereby establishing Agua Fria's prima facie entitlement to the licenses. *See Dick*, 118 N.M. at 544, 883 P.2d at 130. It is uncontroverted that the proposed restaurant meets all zoning requirements and would be competing with other restaurants in the general area that have beer and wine or liquor licenses. Pursuant to NMSA 1978, Section 60–6B–4 (Repl.Pamp.1994), the City of Santa Fe held a public hearing on the applications on January 11, 1995. After the hearing, the City denied approval of the applications, concluding that "issuance of the license ... at [that location] would be detrimental to the public health, safety, and welfare or morals of the residents of Santa Fe." In response thereto the Division Director issued a decision finding that the denial was not supported by substantial evidence in the record. The director concluded that there was "no evidence tending to prove that issuance of the licenses ... would be a detriment to the safety of the residents separate and distinct from a restaurant without liquor sales at the proposed location." Relying on *Southland Corp. v. Manzagol*, 118 N.M. 423, 426, 882 P.2d 14, 17 (1994), which holds that the Division is not required to ratify a governing body's license disapproval if that disapproval is not supported by substantial evidence, the Director concluded that the Division would give final approval to the applications after any pending conditions had been satisfied.

The district court reversed the Division's decision, holding that the City's denial of the applications *was* supported by substantial evidence, and ordered the Division to disapprove the applications as provided by Section 60–6B–4(H) (providing that "[i]f the governing body disapproves of the issuance or transfer of the license, the director shall disapprove the issuance or transfer of the license"). The substantive issue raised on appeal is whether substantial evidence supports the City's disapproval of the applications based on its decision that licensure of the restaurant would be detrimental to the safety of Santa Fe residents.

### EVIDENCE PRESENTED AT THE HEARING

Agua Fria argues, and we agree, that the hearing became more of a land-use or zoning hearing than one limited to the impact of a license. While the quantity of the evidence was generally divided equally between the proponents and opponents, most of the opposition simply did not want a *restaurant*—with or without a license—at that location.

Although Agua Fria had no duty to present evidence at the hearing, *see Dick,* 118 N.M. at 544, 883 P.2d at 130, Craig Watts, the city traffic division director, testified that if the beer and wine licenses were not approved, the restaurant would operate with longer hours and would generate more traffic because it would also serve breakfast to make up for the lost beer profits. When specifically asked whether there were legitimate safety traffic concerns regarding Agua Fria, he testified that "there's traffic concerns on every street in town." He testified that when he considered whether the differential impact of granting the license would be greater than the impact of operating a restaurant without a beer and wine license, he concluded that traffic levels would not be negatively increased. *[SRP 52]* He remarked that the Council's concerns about traffic problems were *zoning issues,* not *liquor license issues.*

The opposing testimony fell into four general categories: the nature of the traffic conditions; the restaurant location as a nuisance to adjacent residents; general statistical information; and crime-rate concerns. Some opponents criticized "the institution" on the basis of "size and character." Others testified about the narrowness of the adjacent streets and the speed of the traffic, and argued that those factors, when combined with alcohol, presented a greater danger to children who crossed the adjacent streets to get to the neighborhood youth center. A resident testified about her concerns with living next door to a restaurant and urged that a "low-key business" should occupy the facility. Another resident presented statistics purporting to show that 57% of those people arrested for DWI in Santa Fe had imbibed only beer before their arrests and that in 33% of DWI arrests, the last place of drinking was in a *bar.* She also presented evidence of five accidents close to or at the specific location of the proposed restaurant (the intersection of Agua Fria street and Romero street) from 1989 to 1993 and 200 accidents in the general area (along Agua Fria street from Guadalupe street to St. Francis drive) during that time period. She emphasized that almost 10% of the accidents in the general area (as opposed to the specific area) were alcohol related. The packet of materials she presented to the council included a chart containing information provided by the Pennsylvania Liquor Control Board that states that "Driving Skills [are] Significantly Affected" after ingesting only one beer. Another resident speculated that if the license were granted, the crime rate would increase. After the hearing, the city council voted 4 to 3 to disapprove the license applications.

### DISCUSSION OF THE ISSUES

■ *The Court of Appeals has initial jurisdiction over the appeal.* In its certification, the Court of Appeals questioned its jurisdiction because Section 60–6B–2(Q) of the Liquor Control Act provides that "[a]ny appeal from the decision of the district court to the supreme court shall be permitted as in other cases of appeals from the district court to the supreme court." Although admitting that this statute could "be interpreted merely to apply the normal rules of appellate procedure to cases of this nature," the Court of Appeals expressed concern because the provision "could also be interpreted as placing exclusive jurisdiction for this appeal with the Supreme Court." As the Court correctly notes, under Rules 12–102(A)(5) and (B) NMRA 1996, the Supreme Court has exclusive jurisdiction where reserved by the Constitution or supreme court order or rule, with all other civil appeals to be initially heard by the Court of Appeals. Under NMSA 1978, Section 34–5–8(A)(6) (Repl.Pamp.1996), the Court of Appeals has initial jurisdiction over appeals involving administrative agencies.

■ The Court of Appeals' concern may be answered summarily by noting that the predecessor to Section 60–6B–2(Q) was enacted before the Court of Appeals was created. *See* NMSA 1941, § 61–516 (Supp.1945); NMSA 1953, §§ 16–7–1 to –13 (Supp.1966) (creating the court of appeals). Following the creation of the Court of Appeals, NMSA 1978, Section 34–5–9 (Repl.Pamp.1996) provided that the Court of Appeals would hear all cases formerly heard by the Supreme Court except for those specifically reserved in the constitution or by statute. There is no specific reservation of appeals over Division

decisions to this Court in our constitution or statutes. Therefore, the Court of Appeals has original appellate jurisdiction over Division orders. For judicial economy, however, and because the Court of Appeals requested direction as to the application of case law, we now decide the merits of this case.

 *Both Dick and In re New Mexico Liquor License # 4035 apply to transfers and issuances of new licenses.* The Court of Appeals questioned whether *Dick* and *In re New Mexico Liquor License # 4035* apply here because they involved transfer of an existing license instead of issuance of a new license. This Court noted in *Regents of University of New Mexico v. Hughes,* 114 N.M. 304, 309, 838 P.2d 458, 463 (1992), that "[w]hen the Liquor Control Act was enacted in 1981, the sharp distinction between issuance and transfer of a license ... does not seem to have been present; and ... Section 60–6B–3(D) spoke of a license 'issued' and one 'transferred' in practically the same breath." We concluded that "there is no apparent reason for distinguishing between issuance and transfer when considering the availability of the statutory right of appeal." *Id.* The section of the Liquor Control Act that requires an evidentiary hearing covers both issuance and transfer of licenses. *See* Section 60–6B–4. For these reasons, we see no material difference in the quality of proof necessary to decide either license issue. In the context of this case both involve the impact of a license on a particular location.

The City questioned whether the *Dick* analysis was applicable to issuance of new licenses since the proposed location had never been licensed. The City argues that the protestors could not possibly meet the burden suggested by *Dick* of showing "specific alcohol-related incidents to demonstrate that the granting of the liquor licenses [would be] the source of the anticipated 'safety' problems in this locale." However, there are other restaurants with licenses in the general area, and the protestors were free to present evidence showing an increase in alcohol-related accidents since the granting of those licenses, which they did not do. They also had an opportunity to present evidence that certain conditions increase the safety risks in the specific area, but they didn't. The protestors made reference to accident records in the general area; however, they failed to provide the Council with any evidence or analysis showing that the presence of licensed restaurants in the general area resulted in an increase in auto accidents or other traffic hazards.

 *There was an absence of substantial evidence to support the conclusion of negative impact upon safety.* The statutes and our recent decisions involving transfer of liquor licenses have established certain legal principles that are applicable in this case. The first is that once voters approve the sale of alcoholic beverages in a community and the proposed location meets all zoning standards and ordinance requirements, the denial of a transfer (or issuance) must be based on a finding of health, safety, or moral hazards at the particular location. Section 60–6B–4(F); *In re N.M. Liquor License No. 4035,* 118 N.M. at 546, 883 P.2d at 132. Second, once preliminary approval of a license has been granted by the Division, the burden to establish the requisite detrimental effect is on the governing authority. *See Dick,* 118 N.M. at 544, 883 P.2d at 130. Third, notwithstanding the apparently unconditional language of Section 60–6B–4(H), which gives a governing board the power to disapprove the issuance of a license, its decision will not be upheld in the absence of substantial evidence. *Southland,* 118 N.M. at 426, 882 P.2d at 17. To be substantial, the evidence must be both competent and relevant. *In re N.M. Liquor License No. 4035,* 118 N.M. at 546, 883 P.2d at 132. Fourth, to be probative, a lay witness's opinion about safety issues must be based on knowledge of the facts supporting the opinion, and there must be "a rational connection between the observations made and the opinion formed;" otherwise the opinion is speculative and irrelevant. *Dick,* 118 N.M. at 544, 883 P.2d at 130 (quoting *State v. Luna,* 92 N.M. 680, 684, 594 P.2d 340, 344 (Ct.App.1979)).

In *In re New Mexico Liquor License No. 4035,* we found a lay opinion that "[a] greater availability of alcohol will increase the possibility of [accidents] involving harm in our community," without more, to be "based

upon speculation" and, therefore, to be irrelevant. 118 N.M. at 546, 883 P.2d at 132. Although here the protestors testified that the streets were narrow and the traffic was heavy at the proposed location, the city traffic division director demonstrated that those conditions were no different than any other commercial location in downtown Santa Fe. In other words, if narrow streets and heavy traffic were sufficient evidence to preclude issuance of a license, the City would be able to deny approval to practically *all* applicants. Further, it was uncontroverted that alcohol was already being served at other restaurant locations in the general area, and yet there was no change in the number of alcohol-related accidents per year for a five-year period. Thus, the protestors did not, and could not on the evidence presented, show a sufficient factual nexus between issuance of restaurant licenses to other restaurants in the general area and an increase in accidents or other hazards in the area to establish detriment to safety. Nor did the protestors establish that the area was "saturated" with restaurants that sell beer and wine with meals to such an extent that safety had been compromised.

The evidence that most DWIs involve people who last drank at a bar was not relevant to restaurants serving beer and wine with meals. Further, we do not find the chart, which had no evidentiary foundation to support its broad conclusion that drinking a single beer can significantly affect driving ability, to be competent evidence. The chart has no qualifying information, such as how "significantly" is defined, or whether the tests on which the chart was based were conducted with or without food consumption, nor does it describe the test conditions or subjects. Councilor Manning noted the arbitrariness of approving some applications for licenses in the general area but denying others when conditions were no different: "I'm just wondering where all this public outcry was when the convent right across Guadalupe was converted into a drinking establishment." In short, there was no direct evidence that the license itself, apart from the existence of a restaurant in the busy neighborhood, would negatively affect the health, safety, or morals of the residents of the area.

The arguments of the protestors were rooted in fear and speculation, not on substantial evidence as defined in our recent case law.

The City's disapproval might have been supported by substantial evidence if this specific location had traffic or safety conditions that significantly differed from other downtown commercial Santa Fe locations; if there were evidence of a differential impact in traffic conditions between operation of a restaurant with a license and one without; if the City had consistently denied approval for licenses *to all applicants* in the general area based upon legitimate safety concerns; or if the evidence showed a negative impact based upon issuance of existing restaurant licenses in the general area. However, such evidence was not presented and the City's decision was an arbitrary one. As such, the Division Director properly disregarded the City's disapproval. *See Southland*, 118 N.M. at 426, 882 P.2d at 17 (holding that the Division must disregard disapprovals not supported by substantial evidence). Accordingly, we reverse the district court's order reversing the Division's decision and remand for reinstatement of the Division's order.

IT IS SO ORDERED.

RANSOM and FRANCHINI, JJ., concur.