1999-NMCA-088

984 P.2d 796

The ATLIXCO COALITION, et al., Petitioners–Appellants,

and

Andy Padilla and Theodore S. Jojola, Intervenors–Appellants,

and

Pueblo of Isleta, Intervenor–Appellant,

v.

COUNTY OF BERNALILLO, the Board of County Commissioners of Bernalillo County, and Southwest Landfill, Inc., Respondents–Appellees.

No. 18,901, 18,950, 18,951.

Court of Appeals of New Mexico.

May 10, 1999.

Certiorari Denied, No. 25,789, June 21, 1999.

**550**

J. Douglas Foster, Foster•Johnson•Harris•McDonald, Albuquerque, for Appellants.

John A. Myers, Kevin J. McCready, Myers, Oliver & Price, P.C., Albuquerque, for Appellee–Southwest Landfill, Inc.

Patrick F. Trujillo, Assistant County Attorney, Albuquerque, for Appellees County of Bernalillo and Board of County Commissioners of Bernalillo County.

Ussery & Parrish, P.A., Albuquerque, for Intervenors–Appellants.

## OPINION

ARMIJO, Judge.

{1} The Atlixco Coalition and others (Atlixco) challenge the Bernalillo County Board of County Commissioners' (the Board) approval of an "amendment" to Southwest Landfill, Inc.'s (Southwest), operating permit. The amended permit effectively allowed Southwest to expand the operation of its landfill. In this appeal, Atlixco alleges: (1) the Board's action violated county law, including policy and resolution made binding upon the Board by ordinance; (2) Southwest's application for an amendment to its existing permit was tantamount to an application for a wholly new permit and accordingly was inappropriately before the Board for Southwest's failure to submit adequate documentation; and (3) the Board impermissibly approved Southwest's application without the affirmative vote of a super-majority. We review the Board's decision to determine whether it is arbitrary or capricious, an abuse of discretion, not supported by substantial evidence in the record, or otherwise not in accordance with law. For the reasons explained below, we reverse the Board's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} This appeal centers on the operation of a landfill, located in the Rio Grande Valley southwest of Albuquerque. Appellants are individual residents and neighborhood organizations who sought certiorari review by the district court of the decision of the Board to approve a special-use permit application filed by Southwest.

### a. THE PERMITTING PROCESS

{3} In 1986, Southwest began operating a "modified sanitary landfill" at its site by a Board-issued special-use permit (the Special–Use Permit). On September 23, 1996, Southwest submitted an application to the county to modify the Special–Use Permit. It sought permission to convert its "construction debris

only" landfill to a "municipal waste" landfill. Southwest sought to make this transformation by having the county delete from the Special–Use Permit a condition which restricted the landfill to receipt of "construction debris only."

{4} The first step in Southwest's effort to effect this change was consideration of its application by the Bernalillo County Planning Commission (the CPC). The CPC's staff recommended against approving the modification. The staff reported to the CPC that "[t]he applicant has submitted no technical information supporting the request or demonstrating how or why the requested change is consistent with County Policies and adopted Ordinances." It further reported that Southwest had failed to demonstrate the need for an additional municipal waste landfill and that the application was inconsistent with the Albuquerque/Bernalillo Comprehensive Plan, the Southwest Area Plan, and the Ground–Water Protection Policy and Action Plan.

{5} During a public hearing before the CPC, the county's zoning administrator testified that the change from a "construction debris" landfill to a "municipal waste" landfill was a change in use and as such would have to be supported by the same type of technical information that was considered and analyzed in connection with approval of the Cerro Colorado landfill, a municipal-waste landfill. The CPC, however, rejected its staff's recommendation and voted to approve the change to a municipal-waste landfill.

{6} Atlixco thereafter filed an appeal to the Board. On December 17, 1996, the Board conducted a public meeting. At that meeting, by a vote of three to two, the Board denied the appeal and approved the CPC's action. The effect of the Board's action was to authorize Southwest's operation of a "municipal landfill," as set forth in 20 NMAC 9.1(AM)(1) (1994).

{7} Atlixco then sought certiorari review of the Board's decision in district court. In a brief order, the district court dismissed Atlixco's petition as without merit. This appeal followed.

**b.** *THE SPECIAL–USE PERMIT*

{8} Southwest's original Special–Use Permit authorized the company to accept approximately 400,000 yards of waste from the site of the then-future airport. Southwest has continued to operate, without interruption, a "modified sanitary landfill" at this site per the Board's regular renewal of the Special–Use Permit, amendment of which was the subject of the proceedings below.

{9} Among other conditions, the Special–Use Permit restricts the company regarding the types of waste it can accept. Specifically, the permit's eighth condition states: *"Construction debris only* shall be permitted at the Southwest Landfill. The definition of Construction Debris shall be as stated in the New Mexico Solid Waste Management Regulations." State regulation further provides:

"construction and demolition debris" means materials generally considered to be not water soluble and nonhazardous in nature, including, but not limited to, steel, glass, brick, concrete, asphalt roofing materials, pipe, gypsum wallboard and lumber from the construction or destruction of a structure project, and includes rocks, soil, tree remains, trees and other vegetative matter that normally results from land clearing. If construction and demolition debris is mixed with any other types of solid waste, it loses its classification as construction and demolition debris. Construction and demolition debris does not include asbestos or liquids including but not limited to waste paints, solvents, sealers, adhesives or potentially hazardous materials.

20 NMAC 9.1(T) (1994). The Board has incorporated this restriction into each of Southwest's permits since the company began operating its landfill. Each year from 1987 to 1990, Southwest sought to remove the restriction. Prior to 1996, the Board denied each application.

{10} By state regulation, a "municipal landfill" can receive much more than "construction and demolition debris." Specifically, it may receive "household waste ... [and] other types of [Federal Resource Conservation and Recovery Act] Subtitle D waste such as commercial solid waste, nonhazardous

sludge, small quantity generator waste, industrial solid waste, construction and demolition debris and other special wastes as defined in Section 105.BZ." 20 NMAC 9.1(AM)(1). Under state law, a landfill is automatically regulated as a "municipal landfill" if it accepts more than twenty-five tons of waste per day, regardless of its content. *See* 20 NMAC 9.1(AM)(2). The state has already approved, in accordance with state law, Southwest's application to operate a municipal solid waste landfill at this site. *See Atlixco Coalition v. Maggiore*, 1998–NMCA–134, 125 N.M. 786, 965 P.2d 370. Furthermore, Southwest has, on its own initiative, begun accepting more than twenty-five tons of waste per day, thus triggering more stringent state regulation of its operations. *See* 20 NMAC 9.1(AM)(2). Regardless of the state's regulation of the landfill, however, the county retains authority to regulate land use within its boundaries. *See* NMSA 1978, § 3–31–1 (1995); *see also* NMSA 1978, § 74–9–42 (1990); 20 NMAC 9.1.1004 (1995). Southwest, therefore, was required to obtain the Board's approval before expanding its landfill.

*STANDARD OF REVIEW*

{11} In reviewing the decisions of a zoning body, we look to the whole record and examine all the evidence presented, both that which supports as well as that which contradicts the action taken. The focus of our inquiry is to determine whether: (1) the Board acted fraudulently, arbitrarily, or capriciously; (2) its decision is not supported by substantial evidence or exceeded the scope of its authority; or (3) the decision is otherwise not in accordance with law. *See* Rule 1–074(Q) NMRA 1999; *see also Embudo Canyon Neighborhood Ass'n v. City of Albuquerque*, 1998–NMCA–171, ¶ 7, 126 N.M. 327, 968 P.2d 1190; *Siesta Hills Neighborhood Ass'n v. City of Albuquerque*, 1998–NMCA–028, ¶ 7, 124 N.M. 670, 954 P.2d 102. In reaching our conclusion, we do not substitute our judgment for that of the administrative body. *See Clayton v. Farmington City Council*, 120 N.M. 448, 453, 902 P.2d 1051, 1056 (Ct.App.1995).

*DISCUSSION*

{12} Chief among Appellants' claims is its allegation that the Board violated applicable county law. Specifically, Appellants claim that the Board failed to: (1) consider whether approval of Southwest's application would violate the county's Ground–Water Protection Policy and Action Plan (the GPPAP); and (2) apply the requirements of the county's Resolution No. 116–86 (Oct. 21, 1986). The Board and Southwest argue, however, that the GPPAP and Resolution No. 116–86 do not have the force of law and therefore are not binding on the Board's actions. We will determine as a matter of law whether these measures are binding upon the Board. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 38, 888 P.2d 475, 484 (Ct.App.1994) ("Construction of the [zoning] ordinance is, of course, a matter of law.").

{13} In November 1993, the Board adopted the GPPAP by resolution. Inter alia, the GPPAP prohibits the "expansion of or creation of new municipal or privately-owned landfills in crucial areas and wellhead protection areas." GPPAP § 3. Accordingly, implicit in its plain terms, the GPPAP requires a determination of whether a proposed expansion of an existing or creation of any new landfill will infringe upon "crucial areas [or] wellhead protection areas." *Id.*

{14} The Board adopted Resolution No. 116–86 in 1986, providing in pertinent part:

A. A proposed land use change must be found to be consistent with the health, safety, and general welfare of the County.

. . .

C. A proposed land use change shall not be in significant conflict with adopted elements of the Comprehensive Plan or other County Master Plans and amendments thereto including privately developed area plans which have been adopted by the County.

D. Stability of land use and zoning is desirable; therefore, the applicant must provide a sound justification for land use change. The burden is on

the applicant to show why the change should be made.

This measure applies to "zone map changes and Special Use Permit, [sic] applications pursuant to the Comprehensive County Zoning Code[.]" *Id.* When invoked, this provision thus imposes substantive and procedural guidelines for any zone map changes and applications for special-use permits. Furthermore, it is the applicant's burden to demonstrate that its proposal is consistent with the community's general welfare and is not in "significant conflict" with the county's overall zoning scheme. *Id.*

{15} Citing *Dugger v. City of Santa Fe,* 114 N.M. 47, 55, 834 P.2d 424, 432 (Ct.App. 1992), the Board and Southwest argue that these measures were not adopted with the requisite formality which would allow the inference that they are de facto ordinances. *See also Williams v. City of Tucumcari,* 31 N.M. 533, 536, 249 P. 106, 107 (1926) (noting that resolutions do not have the weight of law, as does an ordinance). This argument, however, ignores subsequent county enactments.

{16} In September 1996, just two months prior to the public hearing on the matter now appealed, the Board formally adopted Ordinance No. 96–22. Notably, this county law provides:

> (2) Disposal. Disposal of solid waste by persons so permitted shall be made at a solid waste facility site. *If disposal of solid waste occurs in Bernalillo County, compliance with Bernalillo County zoning ordinances and regulations, the Albuquerque/Bernalillo County Ground–Water Protection Policy and Action Plan, and other local land use policies shall occur. . . .*

Ordinance No. 96–22(E)(2) (emphasis added). By reference, this enactment explicitly incorporates the GPPAP and implicitly incorporates Resolution No. 116–86. *Cf. City of Las Cruces v. Public Employee Labor Relations Bd.,* 1996–NMSC–024, 121 N.M. 688, 690, 917 P.2d 451, 453 (recognizing state statute's inferential incorporation of agency regulation). Moreover, the ordinance incorporates previous land-use planning measures in mandatory terms. *Cf. Dugger,* 114 N.M. at 55, 834 P.2d at 432 (determining resolution's precato-

ry language supported conclusion that it established no binding authority). Such incorporation effectively gave the GPPAP and Resolution No. 116–86 the force of law within the context of Ordinance No. 96–22. *See Golden Gate Corp. v. Sullivan,* 112 R.I. 641, 314 A.2d 152, 154 (1974) (upholding town ordinance incorporating procedural requirements by reference); *Snohomish County v. Anderson,* 123 Wash.2d 151, 868 P.2d 116, 117 (1994) (en banc) (noting county ordinance incorporating "Countywide Planning Policies" by reference); *see also* 1A Norman J. Singer, *Sutherland Stat. Constr.* § 22.25 (adoption of other acts by reference) and 2B § 51.07 (adoption of statutes by reference) (5th ed.1992). We therefore hold that these measures are binding upon the Board's waste disposal permitting decisions. *See City of Albuquerque v. State Labor & Indus. Comm'n,* 81 N.M. 288, 290, 466 P.2d 565, 567 (1970) ("The Labor Commissioner, as any other administrative agency, is bound by its own rules and regulations."); *see also Miller v. City of Albuquerque,* 89 N.M. 503, 506, 554 P.2d 665, 668 (1976) (reversing city's zoning decision due to its acting "contrary to its own established procedures for accepting zone change applications"), *cited in West Old Town Neighborhood Ass'n v. City of Albuquerque,* 1996–NMCA–107, ¶ 26, 122 N.M. 495, 927 P.2d 529; *cf. Planning & Design Solutions v. City of Santa Fe,* 118 N.M. 707, 712, 885 P.2d 628, 633 (1994) (reversing city's contract award where it "changed the rules in the middle of the game"). Furthermore, we determine that since the appealed action concerns the "[d]isposal of solid waste by persons so permitted[,]" Ordinance No. 96–22(E)(2), and thus the GPPAP and Resolution No. 116–86, are invoked and apply to this action.

{17} We next consider whether the Board's action comports with the GPPAP and Resolution No. 116–86. For the reasons discussed below, we hold that the Board's decision is arbitrary and capricious and is not in accordance with law. We further hold that the Board's decision is not supported by substantial evidence with respect to compliance with applicable county law.

#### a. THE GPPAP

■ {18} As noted above, the GPPAP is binding upon this matter. Accordingly, the Board erred in approving Southwest's application if such approval amounted to allowing the expansion of its landfill into any "crucial areas [or] wellhead protection areas." GPPAP § 3. The parties strongly contest whether the application in fact implicated any protected area. Despite Board Chairman Valdez's observation that this issue is "probably the most critical question" the Board faced, it made no finding on this point; indeed, the Chairman cut off debate on this issue shortly after noting its importance. The Board's approval of Southwest's application, however, necessarily implies that the Board concluded that its approval would not violate the GPPAP, made binding by Ordinance No. 92–22. Upon our review of the record, we determine that there is no substantial evidence supporting this conclusion.

{19} To support their argument that the proposal would not effect the "crucial area," Appellees point to statements in the record made by: (1) CPC commissioner Kinney at that body's preliminary hearing on the matter; (2) Kevin Gover, Southwest's attorney who was sworn and did testify at the hearing from which Appellants now appeal; and (3) Ernest Lindner, Chief Engineer for MCT, part-owner of the subject landfill, who also testified at the hearing before the Board. Each of these men expressed his opinion that Southwest's proposal did not implicate the "crucial area." Notably, however, neither Commissioner Kinney nor attorney Gover pointed to any specific and established facts as a basis for his opinion. Furthermore, while engineer Lindner did cursorily note that he had conducted the GPPAP-required analysis of the affected land, he offered no explanation regarding what comprised this analysis nor did he provide any documentation of his work. Such unsubstantiated opinions are not substantial evidence. *See City of Santa Fe v. Woodard,* 1996–NMSC–058, 122 N.M. 449, 453, 926 P.2d 302, 306; *see also Dick v. City of Portales,* 118 N.M. 541, 544, 883 P.2d 127, 130 (1994) (reversing administrative decision based upon "opinion testimony unsupported by substantiated facts").

■ {20} The most significant evidence supporting Appellees' position is the CPC's report to the Board. By county zoning ordinance, the CPC must evaluate any land-use permitting application prior to the Board's taking up the issue. *See* Bernalillo County Comprehensive Zoning Ordinance § 18(E)-(F) (1992) (providing roles in permit approval process for the CPC and the Board, respectively). In concluding its review of Southwest's proposal, however, the CPC equivocated in its recommendation to the Board. To wit, in its November 13, 1996, report, the CPC found:

> The approval of the request will allow placement of municipal waste in that portion of the landfill located outside of the apparent Crucial Area identified by the Groundwater Protection Policy and Action Plan. *A determination of the Crucial Area boundaries relative to this site shall be made by staff of the City and County Environmental Health Departments within 120 days.*

(Emphasis added.) This finding reaches no clear conclusion, recommending approval instead upon an apparent assumption. We find this an insufficient basis upon which to affirm the Board's action.

{21} Moreover, all other evidence in the record suggests that the proposal indeed infringes upon the "crucial area." For example, by the time the CPC issued its recommendation, Albuquerque's Environmental Health Department had already concluded that "[t]he Southwest Landfill lies within this 'crucial area.'" Also, in her November 6, 1996, analysis of the matter, a CPC Senior Planner, Susan Jones, recommended denial of the application, concluding that the proposed expansion was inconsistent with the GPPAP's prohibition against expansion of landfills in "crucial areas."

{22} We therefore hold, upon our review of the whole record, that the Board abused its discretion by approving Southwest's application without Appellees' provision of substantial evidence demonstrating that its proposal would not violate the GPPAP. *See Gallegos v. New Mexico State Corrections*

*Dep't,* 115 N.M. 797, 800, 858 P.2d 1276, 1279 (Ct.App.1992) ("An action is an abuse of discretion 'if ... the [agency's] order or decision is not supported by the findings, or the findings are not supported by the evidence.' ") (quoting *Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App.1987)); *see also Woodard,* 1996–NMSC–058, 122 N.M. at 454, 926 P.2d at 307 (reversing administrative decision not supported by substantial evidence as arbitrary and capricious).

**b.** *RESOLUTION NO. 116–86*

■ {23} We similarly conclude that the Board erred in regard to Resolution No. 116–86. As noted above, the Board has made Resolution No. 116–86 binding within the context of Ordinance No. 96–22. As such, it imposes upon an applicant for a zone map change or special-use permit the burden of demonstrating that the application is consistent with the community's general welfare and is not otherwise in "significant conflict" with the county's overall zoning scheme. Southwest failed to adduce any evidence proving its satisfaction of this burden.

{24} However, Southwest argues that Resolution 116–86 *only* applies to applications for changes in the county zoning map or special-use permits. As it characterizes its action before the Board not as an application for a new special-use permit, but merely as an amendment of an existing one, Southwest argues that it did not need to comply with Resolution No. 116–86. We are not persuaded by this argument.

■ {25} We recognize that administrative bodies are entitled to deference, especially in matters regarding internal procedure. *See American Farm Lines v. Black Ball Freight Serv.,* 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) (" 'It is always within the discretion of ... an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it *when in a given case the ends of justice require it.*' " (quoting *NLRB v. Monsanto Chemical Co.,* 205 F.2d 763, 764 (8th Cir.1953)(emphasis added))); *but see Baumgardner v. Secretary, United States Dep't of Hous. & Urban Dev.,* 960 F.2d 572,

577 (6th Cir.1992) (limiting allowance of deference due agency actions regarding internal procedure). In the present case, the Board had no formal procedure for "amending" special-use permits when Southwest filed its 1996 application. *But see* Bernalillo County Comprehensive Zoning Ordinance § 18(C)(3) ("Notwithstanding any other provision of this Ordinance, an application that proposes to change a Special Use for another Special Use shall be processed as a new application.") (amended by Ordinance No. 98–15, § 1, July 14, 1998). In the absence of clearly applicable procedure, the Board accepted Southwest's characterization of its action as seeking merely an amendment, not a new permit. However, on the facts presented, we conclude that we owe no deference to this decision.

■ {26} In this regard, we adopt the reasoning expressed in *High Ridge Hinkle Joint Venture,* 119 N.M. at 39, 888 P.2d at 485:

[A] court should not defer if the agency, rather than using its resources to develop the facts relevant to a proper interpretation, ignores the pertinent facts, or if the agency, rather than using its knowledge and expertise to discern the policies embodied in an enactment, decides on the basis of what it now believes to be the best policy.

In the present case, the Board failed even to address the procedural question of whether Southwest's application was more fairly denominated an amendment or an application for a new permit. Indeed, Board Chairman Valdez dismissed Appellants' arguments on the matter, making clear that he did not consider it an important issue:

I'm not preoccupied with the process of amending a permit. I'm not preoccupied with the excellent work that the County Planning Commission does in interpreting, you know, staff recommendations or staff recommendations that are based on a lot of circumstances and the governmental rule, regulation, policy, requirement, whatever the case may be, but, you know, I'm not concerned with the process as to how this issue got here to this County Commission.

The Board effectively demurred in addressing this important procedural question.

{27} Moreover, we note that Southwest sought no small modification of its Special–Use Permit. Simply recognizing the expanded menu of wastes it would be allowed to accept if operating a municipal landfill, this is a radical change. *Compare* 20 NMAC 9.1(T) (defining "construction and demolition debris") *with* 20 NMAC 9.1(AM)(1) (defining types of wastes permitted at municipal landfill); *cf. Town of Grimes v. Board of Adjustment*, 243 N.W.2d 625, 628 (Iowa 1976) (noting that neighboring landowners understandably fear the unpleasant consequences of an adjacent landfill and "a landfill without protective standards might lead to a variety of health, environmental, and esthetic difficulties"). The county's insertion of the construction and demolition debris limitation in each previous permit and its steadfast rejection over the years of Southwest's entreaties that it be allowed to expand its operations further indicates that the change is not to be lightly regarded. *Cf. High Ridge Hinkle Joint Venture*, 119 N.M. at 42, 888 P.2d at 488 (noting that "unexplained reversal of a previous [administrative] interpretation or consistent practice" generally merits little deference of a reviewing court).

{28} Indeed, Southwest was not attempting merely to amend its existing Special–Use Permit with no significant consequence, but was seeking to expand and change entirely the effect and scope of its existing permit, resulting in a more intense use of the subject land. *See* Bernalillo County Comprehensive Zoning Ordinance § 24(A)(2)(j)(1) (providing the county zoning administrator may approve an amendment to an existing special-use permit provided "any such amendment shall result in an *equal or less intense use* of land than that first approved by the Board" (emphasis added)). As such, its action is analogous to an application for a new permit, for which applicable administrative procedure already existed. *Cf. Miller v. City of Lockport*, 210 A.D.2d 955, 620 N.Y.S.2d 680, 682 (1994) (holding city erred, given the proposed project's enormous scope and magnitude, in granting special-use permit for construction of a material recovery facility and solid waste transfer station without provision of an environmental impact statement).

{29} For these reasons, we afford no deference to the Board's passive acceptance to Southwest's characterization of its proposal and conclude that the proposal is correctly viewed as an application for a new special use, that is, a municipal solid-waste landfill; Resolution No. 116–86 therefore applied. Because the record contains no evidence indicating that Southwest met its burden under the resolution, the Board erred as a matter of law in approving the application.

## OTHER ISSUES

{30} Appellants further argue that Southwest's application was improperly before the Board due to errors and omissions in its supporting documentation and that the Board violated its own rules by approving Southwest's application without the affirmative vote of a super-majority. However, as we have decided this appeal upon other evidence grounds, we need not reach these secondary issues.

## CONCLUSION

{31} For the reasons stated above, we hold that the Board's decision is not supported by substantial evidence and is otherwise not in accordance with law. We therefore reverse the Board's decision in this matter.

**IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.