This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**HENRY "BUD" SHAVER, TARA SHAVER, and PROTEST ABQ,**

Petitioners-Appellants,

v.                                                              **No. A-1-CA-35493**

**BOARD OF ETHICS AND CAMPAIGN PRACTICES for the CITY OF ALBUQUERQUE, in its official capacity, NATALIE Y. HOWARD, in her official capacity as CITY CLERK for the CITY OF ALBUQUERQUE, and ALEX CURTAS,**

Respondents-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela-Shepherd, District Court Judge**

Law Office of Angelo J. Artuso
Angelo J. Artuso
Albuquerque, NM

for Appellants

Sara Berger, Attorney at Law, LLC
Sara Berger
Albuquerque, NM

for Appellee Alex Curtas

Jessica M. Hernandez, City Attorney
John E. DuBois, Assistant City Attorney
Nicholas H. Bullock, Assistant City Attorney
Albuquerque, NM

for Appellees Board of Ethics and Campaign Practices for the City of Albuquerque and Natalie Y. Howard, City Clerk of the City of Albuquerque, and the City of Albuquerque

**MEMORANDUM OPINION**

**VARGAS, Judge.**

{1}     Protest ABQ, Henry "Bud" Shaver, and Tara Shaver (the Shavers) ask us to reverse the decision of the City of Albuquerque's Board of Ethics and Campaign Practices (the Board) to reprimand and fine them for violations of the City of Albuquerque Election Code. *See* Albuquerque, N.M., Election Code art. XIII, § 2(1) (2012). The fine arose from a complaint filed by Alex Curtas, alleging that Protest ABQ and the Shavers had produced and mailed campaign materials in opposition to then-City Council candidate Pat Davis without registering with the city clerk as a measure finance committee or reporting its activities and expenditures, contrary to the provisions of the Election Code. Following the Board's decision, Protest ABQ and the Shavers appealed to the district court, which certified the matter to this Court. Because we determine that Curtas provided substantial evidence that Protest ABQ expended an amount in excess of $250 in its opposition of then-candidate Davis, we conclude it was a measure finance committee subject to the provisions of the Election Code. We

2

affirm the decision of the Board on the substantial evidence question. We decline to consider Protest ABQ's and the Shavers' constitutional claims at this time and remand those matters to the district court for its consideration.

## I. BACKGROUND

{2} Protest ABQ describes itself as "a peaceful awareness campaign launched to educate and stand against the injustice of abortion, through a strategic and sustained presence." Henry "Bud" Shaver is the executive director of Protest ABQ, and Tara Shaver is its senior policy advisor.

{3} Less than a month before the 2015 Albuquerque City Council election, Protest ABQ produced and mailed a mailer to voters in City Council District 6 identifying candidate Pat Davis by name. The mailer appeared to depict a late term aborted baby alongside the image of what was represented as the baby's mother, who according to the mailer, died from a legal abortion. The mailer, bearing a bulk mail stamp, charged, in part:

> Davis will not bring progress to ABQ but instead, he will ensure that barbaric, late-term abortions will continue in our city

> A vote for Pat Davis is a vote against the women and children of Albuquerque

> A vote for Pat Davis is a vote for radical leftist ideals which have no place in Albuquerque

3

{4} Curtas filed a complaint with the Board against Protest ABQ and the Shavers, alleging violations of Article XIII of the Election Code for failing to register with the city clerk as a measure finance committee and failing to comply with the rules requiring that certain information appear on campaign materials. A "measure finance committee" is defined as:

> a political committee or any person or combination of two or more persons acting jointly in aid of or in opposition to the effort of anyone seeking to have their name placed on the ballot for city office, a petition to place a measure on the ballot pursuant to Article III of this Charter, voter approval or disapproval of one or more measures on the ballot and/or the election to, or recall from, office of one or more candidates for office when such person or people have accepted contributions in excess of $250 or make expenditures in excess of $250 for any of the purposes listed heretofore.

Albuquerque, N.M., Election Code art. XIII, § 2(l) (2012).

{5} The Board scheduled a hearing on Curtas's complaint for November 19, 2015. In anticipation of the hearing, the Shavers and Protest ABQ submitted their written statement of issues to be addressed and list of proposed witnesses and documentary evidence on November 6, 2015. Four days later, on November 10, 2015, Curtas filed his written statement, setting out the issues to be addressed and disclosing his witnesses and exhibits. At the commencement of the hearing, the Shavers and Protest ABQ argued for the dismissal of Curtas's complaint, contending that Curtas failed to file his written statement ten days prior to the scheduled hearing, as required by the

4

Albuquerque, New Mexico City Charter Rules and Regulations of the Board of Ethics and Campaign Practices (the Board Rules & Regulations), Section 6(H)(2)(c) (2009). Curtas responded that his late filing was based on erroneous information provided by the city clerk. Finding that all parties received Curtas's written statement in advance of the hearing and concluding that Section 6(H)(2)(c) of the Board's Rules & Regulations is intended to afford an opportunity for a full and fair hearing, that the Board has discretion to decide whether to dismiss the complaint, and that the Shavers and Protest ABQ were not prejudiced by the one-day delay, the Board denied the motion to dismiss and proceeded with the hearing.

{6}     As proof that Protest ABQ produced the mailer, Curtas introduced into evidence, a copy of the mailer, a news report from a local television station, a blog from a religious organization about the mailer, web pages from the Protest ABQ website, and a blog written by Tara Shaver about the anti-abortion activities of Protest ABQ. Counsel for the Shavers and Protest ABQ also admitted during his opening statement that his clients had produced and distributed the mailer. Thus, the only issue before the Board was whether the Shavers and protest ABQ had spent in excess of $250, making them a measure finance committee as defined by the Election Code.

{7}     While Curtas did not testify at the hearing on his complaint, he presented testimony from a voter living in City Council District 6, who testified that she was a

5

registered voter in the district and had received the mailer. The witness testified that, while she thought everyone in her neighborhood received the mailer, she had only spoken to three people—her nearest neighbors—about whether they received it. On cross-examination, the voter admitted that she did not know how many pieces were mailed or how many were prepared. She did not know how much it cost to print the piece and guessed that the cost to mail it was comparable to the cost of mailing a letter, but she did not know what that amount currently was. Finally, when asked if she knew how many voters lived in District 6, the voter testified that she did not know, but that she knew that there were at least 3000 households in the district. Protest ABQ and the Shavers did not call any witnesses or introduce any exhibits.

{8}     Upon conclusion of the hearing, the Board announced its oral ruling, concluding that Protest ABQ was a measure finance committee and had violated the Election Code. Within a few days of the Board's announcement of its decision, Protest ABQ and the Shavers appealed to the Second Judicial District Court. The Board subsequently filed its written decision, finding that Protest ABQ "made expenditures in excess of $250 for the purpose of acting jointly in opposition to voter approval of the election of Pat Davis" and was therefore a " 'Measure Finance Committee' within the meaning of [Albuquerque, N.M., Election Code art. XIII, § 2(l)]." The Board explained that, in finding that Protest ABQ spent more than $250, it took notice of (1)

the geographic size and number of voters within City Council District 6; (2) the definition of "bulk mail"; (3) the cost of postage for items using a bulk mailing permit; and (4) the statement in Curtas's complaint that "in his experience, 'bulk mailings like the one in question necessarily exceed the $250 limit.' " The Board fined Protest ABQ and the Shavers $1000 and issued a public reprimand for their violations of the Election Code and the Board Rules & Regulations. On appeal to the district court, the Shavers requested, the district court ordered, and we accepted certification of this matter to this Court.

## II.    DISCUSSION

**{9}**      While Protest ABQ and the Shavers raise four issues on appeal, we limit our review to their motion to dismiss Curtas's complaint for his failure to timely file his written statement of issues and their claim that there was not substantial evidence to support the Board's finding that it is a measure finance committee subject to the reporting and other requirements set out in the Election Code.

## A.    The Shavers' and Protest ABQ's Motion to Dismiss

**{10}**      The Shavers and Protest ABQ contend that Section 6(H)(2)(c) of the Board Rules & Regulations mandates dismissal of Curtas's complaint in light of Curtas's failure to timely file his written statement, setting out the issues to be heard, as well as his list of witnesses and exhibits. In response to the Shavers' and Protest ABQ's

7

arguments for dismissal, Curtas argues that the Board Rules & Regulations call for discretion in addressing untimely written statements, but even if they did not, "the 10-day filing date is neither the essence of the rule nor the essence of the . . . Election Code" and is therefore not "mandatory where [the] failure to comply does not result in prejudice."

{11}     Section 6(H) of the Board Rules & Regulations sets out the hearing procedures for alleged violations of the ethics and campaign practices provisions of the Election Code. That section requires that "all parties shall be afforded an opportunity for a full and fair hearing." *Id.* "[S]o that all participants have an opportunity to prepare for the hearing," the Board Rules & Regulations set out notice provisions, requiring the Board to notify the parties of the hearing date and the subject of the hearing. Board Rules & Regulations, § 6(H)(2)(a), (b). In furtherance of the objective to insure a full and fair hearing and allow the parties an opportunity to prepare, the Board has promulgated rules that require the parties to exchange information each intends to introduce at the hearing, including "all issues to be addressed, a list of proposed witnesses, a brief statement of the nature of each witness's testimony, and copies of all documentary evidence." Board Rules & Regulations, § 6(H)(2)(c). Specifically, Section 6(H)(2)(c) of the Board Rules & Regulations provides:

> [I]n conducting hearings, all parties shall be afforded an opportunity for a full and fair hearing. In this regard, the Board shall follow these procedures:
>
> . . . .
>
> c.     The Board shall require that the parties provide in advance a written statement of all issues to be addressed, a list of proposed witnesses, a brief statement of the nature of each witness's testimony, and copies of all documentary evidence to be introduced at least ten (10) days prior to the scheduled hearing. . . . Failure of a Complainant to comply fully with this paragraph shall result in a dismissal of the complaint with or without prejudice at the Board's discretion in view of a totality of the circumstances.

*Id.*

{12}     The Board Rules & Regulations authorize the Board to sanction the parties for their failure to comply with the disclosure requirement, giving the Board discretion in its assessment of a sanction. *See id.* The Shavers and Protest ABQ argue that the language of Section 6(H)(2)(c) requires that the Board dismiss Curtas's complaint and that its discretion under the rule is limited to a determination as to whether the dismissal should be with or without prejudice. We disagree. While the Board Rules & Regulations state that the failure to comply "shall result in a dismissal of the complaint with or without prejudice," the language of the Board Rules & Regulations provides the Board with discretion to determine what sanction is appropriate "in view of a totality of the circumstances." *Id.* Indeed, we have long recognized that administrative bodies are entitled to deference, especially in matters involving their

9

own procedures. *See Atlixco Coal. v. Cty. of Bernalillo*, 1999-NMCA-088, ¶ 25, 127 N.M. 549, 984 P.2d 796. We prefer that "an adjudication on the merits rather than technicalities of procedures and form shall determine the rights of the litigants." *Coulston Found. v. Madrid*, 2004-NMCA-060, ¶ 12, 135 N.M. 667, 92 P.3d 679. We will defer to the Board and will not interfere with the procedures it established to conduct its own business, absent a showing of prejudice, which has not been made here. *See id.* We affirm the Board's denial of the Shavers' and Protest ABQ's motion to dismiss.

**B.      Substantial Evidence Question**

{13}      Next, we turn to the Shavers' and Protest ABQ's claim that substantial evidence did not exist to support the Board's decision. On appeal, we review the whole record in the light most favorable to the Board's decision to determine whether substantial evidence supports the decision. *See Duke City Lumber Co. v. N.M. Envtl. Improvement Bd.*, 1984-NMSC-042, ¶¶ 13, 14, 101 N.M. 291, 681 P.2d 717. "To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as

10

adequate to support the conclusion reached by the agency." *Nat'l Council on Comp. Ins. v. N.M. Corp. Comm'n*, 1988-NMSC-036, ¶ 8, 107 N.M. 278, 756 P.2d 558.

**1.      Measure Finance Committees Under the Election Code**

{14}      The Election Code was promulgated "to increase public confidence in the integrity of government by informing the public of the qualifications of a candidate for elective office and of the possible sources of influence upon that candidate and of the financing of a campaign to influence the passage or defeat of a measure." Albuquerque, N.M., Election Code art. XIII, § 1 (1993). In furtherance of its purpose to inform the public, the City of Albuquerque adopted reporting laws governing measure finance committees who act to aid or oppose candidates and authorized the Board to enforce those laws and promulgate rules and regulations "for its conduct and in aid of interpretation and enforcement of this Election Code[.]" Albuquerque, N.M., Election Code art. XIII, §§ 9(a) (1993), 10(a) (2006). Measure finance committees are required, by the Election Code reporting laws and Board Rules & Regulations, to register with the city clerk, submit financial records, submit a detailed accounting of all advertising expenses, include the name of the sponsor and printing establishment on the campaign materials, and appear before the Board for a mandatory pre-election meeting. Albuquerque, N.M., Election Code art. XIII, § 4(j) (2012); Board Rules & Regulations, §§ 4(A)(1), 4(C)(1), 6(M)(1). Failure to comply with the requirements

11

of the Election Code "shall subject the [Measure Finance] Committee to a fine not to exceed the maximum amount authorized by state law or public reprimand or both as provided in the Board[] Rules [&] Regulations." Albuquerque, N.M., Election Code art. XIII, § 6(c) (2012).

**2.      Substantial Evidence of Election Code Violations**

{15}      Protest ABQ and the Shavers argue that the Board's decision to issue a fine and reprimand was in error because Curtas failed to prove by substantial evidence that Protest ABQ is a measure finance committee subject to the Election Code and the Board Rules & Regulations. The evidence the Board may consider when determining whether Protest ABQ is a measure finance committee need not be admissible under the rules of evidence applicable in court proceedings. Instead, "[t]he Board shall base its decision on evidence of a type commonly relied upon by [a] reasonably prudent [person] in the conduct of their affairs." Board Rules & Regulations, § 6(H)(4)(c). This "reasonable mind" standard set out in the Board Rules & Regulations mimics the standard set out in the New Mexico Administrative Procedures Act (APA), NMSA 1978, §§ 12-8-1 to -25 (1969, as amended through 1999), and allows administrative bodies to rely on hearsay and other evidence that may not be admissible in court proceedings, instead focusing on whether the evidence has any probative value. *See* § 12-8-11(A); *see also Duke City Lumber Co.*, 1984-NMSC-042, ¶ 19 ("The

12

standard for admissibility in an administrative hearing under [the APA] is . . . whether the evidence has any probative value."). Notwithstanding the less restrictive evidentiary standard applicable to the Board, violations of the Election Code or the Board Rules & Regulations must "be supported by at least some evidence that is admissible in a court of law." Board Rules & Regulations, § 6(H)(4)(c). The requirement of some legally admissible evidence, also known as the legal residuum rule, mandates that the decision of the Board be based on "a residuum of competent evidence to support the findings of an administrative agency where a substantial right is at stake." *Duke City Lumber Co.*, 1984-NMSC-042, ¶ 19.

{16}    At the hearing on Curtas's complaint against Protest ABQ and the Shavers, Curtas did present legally admissible evidence in the form of admissions by the Shavers published in blogs that they produced the mailers, as well as testimony from a District 6 voter that she received the mailer.

{17}    In light of Protest ABQ's and the Shavers' admission in blogs and by their counsel at the hearing, that they had produced and mailed the campaign materials attacking then-candidate Davis, the only remaining issue before the Board was whether Protest ABQ "made expenditures in excess of $250" for purposes of determining whether Protest ABQ is a measure finance committee. *See* Albuquerque, N.M., Election Code art. XIII, §§ 9(a), 10(a). Curtas's evidence of Protest ABQ's and

the Shavers' expenditures was made up of Curtas's statement in his complaint that in his experience, "bulk mailings like the one in question necessarily exceed the $250 limit," and the testimony from the District 6 voter that she and three of her nearest neighbors had received the mailer, and that she knew there were at least 3000 households in the district. In addition to Curtas's evidence, the Board took notice of the geographical size and number of voters in the district, "[t]he definition of 'bulk mail' by the United States Postal Service[,]" and the cost of postage for items mailed using a bulk mailing permit. The evidence presented by Curtas is sufficient to satisfy a reasonably prudent person that the cost of printing and mailing a mailer of the sort produced by Protest ABQ and the Shavers exceeded $250.

**III.    CONCLUSION**

{18}    As the Board properly exercised its discretion to deny the Shavers' and Protest ABQ's motion to dismiss, and there was substantial evidence to support its decision, we affirm the decision, but remand the matter to the district court for further proceedings on Protest ABQ's and the Shavers' constitutional claims.

{19}    **IT IS SO ORDERED.**

_____

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

14

**LINDA M. VANZI, Chief Judge**

**M. MONICA ZAMORA, Judge**